# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| UNITED SOVEREIGN | : | |
| AMERICANS, INC., et al, | : | |
| | : | |
| *Petitioner,* | : | **Case No. 5:24cv1359** |
| | : | |
| v. | : | **Judge John R. Adams** |
| | : | |
| STATE OF OHIO, et al., | : | **Magistrate Judge Amanda M. Knapp** |
| | : | |
| *Respondents.* | : | |

## RESPONDENTS OHIO SECRETARY OF STATE FRANK LAROSE AND OHIO ATTORNEY GENERAL DAVE YOST'S MOTION TO DISMISS AMENDED PETITION

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6), Ohio Secretary of State Frank LaRose and Ohio Attorney General Dave Yost (collectively, the Ohio Respondents), move to dismiss Petitioners' amended petition for writ of mandamus. The reasons for this motion are set forth in the accompanying memorandum in support.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ Ann Yackshaw*
ANN YACKSHAW (0090623)
    *Counsel of Record*
HEATHER L. BUCANAN (0083032)
STEPHEN P. TABATOWSKI (0099175)
MARK D. TUCKER (0036855)
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, OH  43215-3428
Tel: (614) 466-2872 | Fax: (614) 728-7592
Ann.Yackshaw@OhioAGO.gov
Heather.Buchanan@OhioAGO.gov
Stephen.Tabatowski@OhioAGO.gov
Mark.Tucker@OhioAGO.gov

*Counsel for Respondents Ohio Secretary of State Frank LaRose and Ohio Attorney General Dave Yost*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES.................................................................................................iii

MEMORANDUM IN SUPPORT ........................................................................................1

     I.      INTRODUCTION ....................................................................................1

     II.     STATEMENT OF ALLEGED FACTS ...................................................1

     III.    LAW AND ARGUMENT.........................................................................3

            A.     Standard of Review...................................................................3

            B.     This Court lacks subject-matter jurisdiction............................4

            C.     Petitioners' claims are barred by the Eleventh Amendment. ...................8

            D.     Petitioners have failed to state a valid claim under the All Writs Act................................................................................10

     IV.    CONCLUSION .....................................................................................17

CERTIFICATE OF SERVICE ...........................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                  **Page(s)**

*Alden v. Maine*,
   527 U.S. 706 (1999)................................................................................. 9

*Alshaibani v. Litton Loan Servicing, LP*,
   528 F. App'x 462 (6th Cir. 2013) ...................................................... 3, 4

*In re Am. Med. Sys., Inc.*,
   75 F.3d 1069 (6th Cir. 1996).............................................................. 17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................. 3

*In re Baldwin-United Corp.*,
   770 F.2d 328 (2d Cir. 1985)............................................................... 10

*Baze v. Parker*,
   632 F.3d 338 (6th Cir. 2011).............................................................. 11

*Carney v. Adams*,
   592 U.S. 53 (2020)............................................................................... 7

*Carten v. Kent State Univ.*,
   282 F.3d 391 (6th Cir. 2002).............................................................. 10

*Clinton v. Goldsmith*,
   526 U.S. 529 (1999)........................................................................... 11

*Ernst v. Rising*,
   427 F.3d 351 (6th Cir. 2005) (*en banc*)................................... 9, 12, 14

*Hafer v. Melo*,
   502 U.S. 21 (1991)......................................................................... 9, 10

*Haggard v. Tennessee*,
   421 F.2d 1384 (6th Cir. 1970)....................................................... 16, 17

*Hunt v. Wash. State Apple Advert. Comm'n*,
   432 U.S. 333 (1977)............................................................................. 8

*Husted v. A. Philip Randolph Inst.*,
   584 U.S. 756 (2018)........................................................................... 14

*Lance v. Coffman*,
   549 U.S. 437 (2007)............................................................................. 7

iii

**Cases**                                                                                          **Page(s)**

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................ 4, 7

*Maczko v. Joyce*,
    814 F.2d 308 (6th Cir. 1987) ................................................................................ 12

*Maryland Election Integrity, LLC v. Maryland State Bd. of Elections*,
    No. SAG-24-00672, 2024 U.S. Dist. LEXIS 83541 (D. Md. May 8, 2024) ...................... 4, 7

*McCormick v. Miami Univ.*,
    693 F.3d 654 (6th Cir. 2012) .................................................................................. 9

*Mixon v. Ohio*,
    193 F.3d 389 (6th Cir. 1999) .................................................................................. 9

*Murray v. United States Dep't of Treasury*,
    681 F.3d 744 (6th Cir. 2012) .................................................................................. 4

*Ohio Democratic Party v. Husted*,
    834 F.3d 620 (6th Cir. 2016) .................................................................................. 1

*Privett v. Pellegrin*,
    No. 85-5049, 1986 U.S. App. LEXIS 19191 (6th Cir. Apr. 17, 1986) ..................... 12, 14

*Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*,
    506 U.S. 139 (1993) ............................................................................................ 9

*Rawlins v. Kansas*,
    714 F.3d 1189 (10th Cir. 2013) ............................................................................ 16

*S&M Brands, Inc. v. Cooper*,
    527 F.3d 500 (6th Cir. 2008) .................................................................................. 9

*In re Schied*,
    No. 08-1895, 2008 U.S. App. LEXIS 18548 (6th Cir. Aug. 5, 2008) ........................ 16

*Seminole Tribe of Fla. v. Florida*,
    517 U.S. 44 (1996) ............................................................................................. 10

*Shelby Advocates for Valid Elections v. Hargett*,
    947 F.3d 977 (6th Cir. 2020) ....................................................................... 4, 5, 6, 8

*Shoop v. Twyford*,
    596 U.S. 811 (2022) ..................................................................................... 13, 15

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ........................................................................................ 4, 6

**Cases**                                                                                    **Page(s)**

*Strayhorn v. Wyeth Pharms., Inc.*,
    737 F.3d 378 (6th Cir. 2013) ............................................................................. 3

*United States v. Denedo*,
    556 U.S. 904 (2009) ........................................................................................... 11

*United States v. New York Tel. Co.*,
    434 U.S. 159 (1977) ........................................................................................... 15

*Ward v. Alt. Health Delivery Sys., Inc.*,
    261 F.3d 624 (6th Cir. 2001) ............................................................................. 3

*Wolfel v. Morris*,
    972 F.2d 712 (6th Cir. 1992) ......................................................................... 9, 10

*Yonkov v. Maximus Holding Grp., LLC*,
    No. 1:23-cv-1317, 2024 U.S. Dist. LEXIS 90554 (N.D. Ohio May 21, 2024) ....................... 3

**Statutes**                                                                               **Page(s)**

8 U.S.C. § 1373(c) ....................................................................................... 15

8 U.S.C. § 1644 ........................................................................................... 15

28 U.S.C. § 1361 .................................................................................. 2, 12, 14

28 U.S.C. § 1651 ................................................................................... *passim*

52 U.S.C. Ch. 205 ........................................................................... 2, 12, 14, 15

52 U.S.C. § 20501(b)(4) ............................................................................... 14

52 U.S.C. § 21081(b)(1)(A)-(D) ......................................................... 2, 12, 14, 15

52 U.S.C. §§ 21111-21112 ............................................................................. 15

Ohio Rev. Code § 3503.24(A) ........................................................................ 17

**Other Authorities**                                                                      **Page(s)**

Fed. R. Civ. P., R. 12(b)(1) ............................................................................ 3

Fed. R. Civ. P., R. 12(b)(6) ............................................................................ 3

U.S. Const., Eleventh Amendment ........................................................... 1, 8, 9, 10

U.S. Const., Fourteenth Amendment .................................................................. 5

<u>**MEMORANDUM IN SUPPORT**</u>

## I.  INTRODUCTION

The Sixth Circuit has bemoaned prior efforts to entangle the federal courts "as overseers and micromanagers[] in the minutiae of state election processes." *Ohio Democratic Party v. Husted*, 834 F.3d 620, 622 (6th Cir. 2016). This, however, may be the most brazen attempt to date. Petitioners want to halt the 2024 election until this Court wades through purported election-administration errors and satisfies itself and Petitioners that Ohio conducts its elections legally. Given the startling and unprecedented nature of the relief sought, one might expect Petitioners to point to grave constitutional or statutory defects in Ohio's election administration. They do not. Indeed, they do not even assert any claims under the U.S. Constitution or the federal statutes regulating elections. Instead, they ask this Court to use one of its most extraordinary powers—the writ of mandamus—to direct state officials to administer elections the way that Petitioners would prefer. It should go without saying that federal law does not permit the writ of mandamus to be abused in this way.

Ultimately, the Court need not address the palpably baseless legal claims in the petition. Petitioners lack standing because they fail to allege a particularized harm that is certainly impending. Petitioners merely fear that errors will mar future Ohio elections, but their fear does not create standing. Further, Petitioners' claims are wholly barred by the Eleventh Amendment.

## II.  STATEMENT OF ALLEGED FACTS

Petitioners, a group of five Ohio voters and two non-profit organizations, seek a writ of mandamus against state and federal officials. Petitioners allege that they have identified widespread voter-registration errors in Ohio, including "illegal duplicate registrations, incomplete or unknown addresses, registrations on or before the registrant's date of birth, age discrepant registrants, registrations on January 1st, registrations on a federal holiday, registrations on a

1

Sunday, registrations with modified dates of birth, registrants whose voter history inexplicably changed, registrants with registration dates altered backwards, and registrants with altered 'unique' state voter identification numbers." Am. Petition ¶ 36, Doc. 12 at PageID 394. According to Petitioners, these registration errors violate the requirements of the Help America Vote Act (HAVA), the National Voter Registration Act (NVRA), and various state laws governing the statewide voter registration database. For example, Petitioners allege that HAVA limits "voting system error rate[s]" to "one (1) error per 500,000 ballot *positions*." *Id*. at ¶¶ 23-25, Doc. 12 at PageID 392. For the 2022 general election, Petitioners claim that HAVA would have permitted up to 34 such errors, but Ohio's "voter registration rolls contained more than one (1) million potential errors." *Id*. at ¶¶ 33, 35, Doc. 12 at PageID 393-394.

According to their petition, "Petitioners believe and therefore aver that Respondents intend to administer and ultimately certify Ohio's 2024 (and subsequent federal) general election(s) (involving both state and federal contests) using the same inaccurate and flawed data conditions" Petitioners allegedly uncovered from the 2022 general election. *Id*. at ¶ 184, Doc. 12 at PageID 427. Petitioners therefore purport to bring this action to snap Ohio back into compliance with federal and state voter-registration standards.

Petitioners seek a writ of mandamus against the Ohio Respondents under the All Writs Act, 28 U.S.C. § 1651, *see id*. at ¶¶ 210-38, Doc. 12 at PageID 432-439, and a writ of mandamus against the Federal Respondents under the Federal Mandamus Act, 28 U.S.C. § 1361, *id*. ¶¶ 239-57, Doc. 12 at PageID 439-442. The requested writ would "formally recognize" the voter-registration errors from 2022, "ministerially correct" these errors, "ascertain to the Court's satisfaction the reasons why the 2022 errors occurred," prevent the Ohio Respondents from certifying the upcoming general election "unless and until the relevant Respondents have demonstrated to the Court that

the 2024 General Election and subsequent elections were conducted in conformity with federal and state law," and generally require all Respondents to "perform their duties as the law intended." Am. Petition at Wherefore Clause, Doc. 12 at PageID 443-444. Petitioners also ask the Court to order the state to submit voter registration requests to the U.S. Department of Homeland Security to verify individuals' citizenship status. *Id*.

The Ohio Respondents now move to dismiss the amended petition.

## III. LAW AND ARGUMENT

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of a complaint when the court lacks subject-matter jurisdiction over the claim. If a plaintiff fails to establish standing to bring a claim, the court lacks subject-matter jurisdiction. *Ward v. Alt. Health Delivery Sys., Inc.*, 261 F.3d 624, 626 (6th Cir. 2001). To survive a motion to dismiss, the plaintiff must clearly allege facts demonstrating each element of standing. *Yonkov v. Maximus Holding Grp., LLC*, No. 1:23-cv-1317, 2024 U.S. Dist. LEXIS 90554, at *8 (N.D. Ohio May 21, 2024).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must allege sufficient facts that, accepted as true, 'state a claim to relief that is plausible on its face.'" *Strayhorn v. Wyeth Pharms., Inc.*, 737 F.3d 378, 387 (6th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating a motion to dismiss under Rule 12(b)(6), the Court "must accept all of Plaintiffs' well-pleaded factual allegations as true and construe them in a light most favorable to Plaintiffs." *Alshaibani v. Litton Loan Servicing, LP*, 528 F. App'x 462, 463-64 (6th Cir. 2013). However, the Court need not accept "legal conclusions or

3

unwarranted factual inferences," and "a formulaic recitation of the elements of a cause of action will not do." *Id.* (quotations omitted).

B.     **This Court lacks subject-matter jurisdiction.**

Petitioners stumble over the first hurdle on the way into federal court: they have failed to allege a personal and concrete harm. As a result, they lack Article III standing, and this Court lacks jurisdiction over their claims. This alone dooms the petition, so the Court "can begin and end its analysis with [Petitioners'] standing." *Maryland Election Integrity, LLC v. Maryland State Bd. of Elections*, No. SAG-24-00672, 2024 U.S. Dist. LEXIS 83541, at *5 (D. Md. May 8, 2024). Indeed, another federal district court recently reached the same conclusion, holding that United Sovereign Americans and one of its members lacked standing to bring the same claims as those before this Court. *Id.* at *8-11. Sixth Circuit precedent compels the same result here. *See Shelby Advocates for Valid Elections v. Hargett*, 947 F.3d 977, 981 (6th Cir. 2020).

The jurisdiction of federal courts extends only to cases or controversies under Article III. Unless a plaintiff has standing to sue, no Article III case or controversy exists. *Murray v. United States Dep't of Treasury*, 681 F.3d 744, 748 (6th Cir. 2012) (citing *ASARCO Inc. v. Kadish*, 490 U.S. 605, 613 (1989)). To satisfy Article III standing, a plaintiff must show a concrete and particularized injury-in-fact that is fairly traceable to the defendant's actions and that is likely to be redressed by a favorable decision of the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561 (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)).

Petitioners fail on the first Article III requirement: injury in fact. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). The Sixth Circuit's

4

decision in *Shelby Advocates* is dispositive here. 947 F.3d at 981. There, an organization and four individual plaintiffs sued state and local election officials, alleging that "in future elections, the defendants will burden their right to vote, dilute their votes, and disenfranchise them in violation of the Fourteenth Amendment's Equal Protection and Due Process clauses." *Id.* at 979. The organization claimed both associational standing on behalf of its members as well as organizational standing arising from an alleged diversion of resources caused by past election problems. *Id.* The Sixth Circuit held that the plaintiffs' standing theories shared "at a minimum, an imminence problem." *Id.* That was because their "allegations with respect to injury all boil down to prior system vulnerabilities, previous equipment malfunctions, and past election mistakes." *Id.* Such conjectural allegations of past unlawful conduct, without more, fail to establish a "substantial risk" of a future injury, let alone one that is "'certainly impending.'" *Id.* at 982.

The same is true here. Petitioners' injuries generally arise out of what they allege to be "voter registration apparent errors," "inaccurate voter registration rolls," "discrepancies between votes cast and actual votes reported," and "extreme voting errors generally" in past Ohio elections. Am. Petition, ¶ 39, Doc. 12 at PageID 394. But Petitioners' factual allegations relate only to past elections. Petitioner Rigano alleges he has written to Secretary LaRose's Office as well as the county boards of election "requesting transparency as to election law compliance and voter registration roll discrepancies," but never received a response. *Id.* at ¶ 85 at PageID 401-402. Petitioner Perkins alleges that she lost a 2023 election for Triway School Board after all the ballots, including absentee ballots, were counted. *Id.* at ¶¶ 76-78 at PageID 400. Petitioner Loughman alleges that, as a volunteer poll worker during the 2020 primary election, she and other poll workers were unable to conduct an end-of-the-night audit and were told by the local board of elections to "submit the voting materials" without completing the audit. *Id.* at ¶¶ 79-81 at PageID 401.

Allegations of harm suffered by the newly added petitioners are even more scant. Petitioners Healy and Brej are identified as individuals who "voted in the 2022 General Election" and who "should be able to reasonably rely" on the "registration database as to whether their votes have been properly registered and counted." *Id*. at ¶¶ 82-83, 135, Doc. 12 at PageID 401, 414.

Significantly, Petitioners are careful to note that these past elections did not harm them. Petitioners are clear that they "are not seeking to undermine official elections results previously certified." *Id*. at ¶ 210, Doc. 12 at PageID 432-433. And they do not allege that their general complaints about Ohio's election law systems affected Petitioner Perkins' election. In fact, they do not allege that Ohio's election law systems affected the outcome of *any* election, and even admit that the opposite may be true. *Id*. at ¶ 18, Doc. 12 at PageID 391 ("Petitioners acknowledge the possibility that the 'winner' received more votes than the 'loser' in every contested race" of Ohio's 2022 general election.) And they expressly avoid accusing "any person or entity of engaging in election fraud" whether in the past or future. *Id*. at ¶ 148, Doc. 12 at PageID 419.

As to forward-looking allegations of harm, the petition is nearly silent. Petitioners merely believe "that absent intervention by this Court, Respondents will permit the same apparent errors to occur in Ohio's 2024 General Election, and in all subsequent federal elections." *Id*. Like *Shelby Advocates*, all of Petitioners' alleged injuries "boil down to . . . past election mistakes." *Shelby Advocates*, 947 F.3d at 981. The lone allegation of future injury is their speculative "[f]ear that individual mistakes will recur." *Id*. But fear of repeated mistakes alone "does not create a cognizable imminent risk of harm." *Id*. In other words, Petitioners' speculative future injuries cannot supply standing because they are "conjectural and hypothetical." *See Spokeo*, 578 U.S. at 339 (quotations omitted).

6

But even *if* Petitioners adequately pleaded an imminent risk of harm (which they did not), that harm is not *particularized*. As was the case when United Sovereign Americans filed a federal suit in Maryland, Petitioners "are simply alleging that [Respondents] did not act in accordance with the law in administering the elections. . . ." *See Maryland Election Integrity, LLC*, 2024 U.S. Dist. LEXIS 83541, at *5. Such allegations present "generalized grievances applicable to the community as a whole." *Id.* But federal court is not a "forum for generalized grievances" that are "plainly undifferentiated and 'common to all members of the public.'" *Lance v. Coffman*, 549 U.S. 437, 440 (2007). Setting aside their impermissible speculation, Petitioners have alleged only injuries that would be common to all members of the public. In fact, they do so specifically, alleging that voter registration errors "result[] in a diluted vote and further harm *to Petitioners and the electorate at large*." Am. Petition at ¶ 226, Doc. 12 at PageID 436 (emphasis added). This type of generalized grievance is not an Article III injury that can confer standing. *Lance*, 549 U.S. at 440. To the contrary, the Supreme Court has "consistently held that a plaintiff raising only a generally available grievance about government -- claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large -- does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573-74; *see also Carney v. Adams*, 592 U.S. 53, 58 (2020) ("[A] grievance that amounts to nothing more than an abstract and generalized harm to a citizen's interest in the proper application of the law does not count as an 'injury in fact' and does not show standing.").

These problems also doom any theory of associational standing advanced by the non-profit organizations, United Sovereign Americans and CCVO. At the outset, the organizational Petitioners have not alleged that any of the individual Petitioners—or anyone else, for that

matter—are among their members. But even if they had, an association can only assert standing on behalf of its members if its members otherwise have standing to sue in their own right. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Assuming the organizational Petitioners have members, they have not alleged any member has suffered a cognizable Article III injury.

Nor do United Sovereign Americans or CCVO have organizational standing. To the extent Petitioners advance a diversion-of-resources theory of standing, CCVO alleges "only backwards-looking costs, not the imminent future injury needed to establish standing. . . ." *Shelby Advocates*, 947 F.3d at 982 (citing *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832 (6th Cir. 2001)). Further, "an organization can no more spend its way into standing based on speculative fears of future harm than an individual can." *Id*. (citing *Clapper v. Amnesty Int'l*, 568 U.S. 398, 416 (2013)). Accordingly, CCVO cannot predicate standing on its research of voting machines or correspondence with Ohio election officials. Am. Petition at ¶¶ 70-74, Doc. 12 at PageID 399-400. And for the same reasons, United Sovereign Americans does not have standing simply because it "reviewed Ohio's voter registration data from the 2022 General Election." *Id*. at ¶ 163, Doc. 12 at PageID 423. Finally, United Sovereign Americans' theory that it has standing because it "is not seeking a distinct form of relief from the other Petitioners," *id*. at ¶ 68, Doc. 12 at PageID 389, also fails because none of the other Petitioners have standing.

As in *Shelby Advocates*, that's "the long and short of it"—Petitioners have "failed to demonstrate the imminence of any injury in fact, depriving them of Article III standing to bring this claim." *See Shelby Advocates*, 947 F.3d at 983. This alone requires dismissal.

### C.     Petitioners' claims are barred by the Eleventh Amendment.

The Eleventh Amendment also bars Petitioners' claims against the Ohio Respondents. Eleventh Amendment immunity "strikes the proper balance between the supremacy of federal law

8

and the separate sovereignty of the States." *Alden v. Maine,* 527 U.S. 706, 757 (1999). "Eleventh Amendment immunity 'bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments, by citizens of another state, foreigners or its own citizens.'" *McCormick v. Miami Univ.,* 693 F.3d 654, 661 (6th Cir. 2012) (quoting *Thiokol Corp. v. Dep't of Treasury,* 987 F.2d 376, 381 (6th Cir. 1993)); *see also Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146 (1993) ("[S]uits against the States and their agencies . . . are barred regardless of the relief sought.") (citation omitted).[1] Moreover, the Supreme Court has "emphasized that official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. Suits against state officials in their official capacity therefore should be treated as suits against the State." *Hafer v. Melo,* 502 U.S. 21, 25 (1991) (internal quotation marks and citations omitted). Finally, Eleventh Amendment immunity bars both federal and state-law claims against states in federal court. *Ernst v. Rising,* 427 F.3d 351, 368 (6th Cir. 2005) (*en banc*) ("[T]he States' constitutional immunity from suit prohibits *all* state-law claims filed against a State in federal court, whether those claims are monetary or injunctive in nature.") (emphasis in original).

Eleventh Amendment immunity is "subject to a few exceptions." *Mixon v. Ohio,* 193 F.3d 389, 396-97 (6th Cir. 1999) (footnote and citation omitted). "There are three exceptions to a State's sovereign immunity: (a) when the State has consented to suit; (b) when the exception first set forth in *Ex parte Young* . . . applies; and (c) when Congress has properly abrogated a State's immunity." *S&M Brands, Inc. v. Cooper,* 527 F.3d 500, 507 (6th Cir. 2008) (citation omitted).

---

[1]"The Supreme Court has long held that the eleventh amendment prevents a federal court from entertaining a suit brought by a citizen against his own state." *Wolfel v. Morris,* 972 F.2d 712, 718 (6th Cir. 1992) (citing *Hans v. Louisiana,* 134 U.S. 1 (1890)).

9

Applying these principles here, Petitioners' claims against the Ohio Respondents are barred by the Eleventh Amendment. The official-capacity claims against Secretary LaRose and Attorney General Yost are just suits against the State of Ohio by another name. *Hafer*, 502 U.S. at 25. And none of the exceptions to immunity apply here. The State of Ohio has not waived its Eleventh Amendment immunity, and Congress has not expressed its intent to abrogate it through the All Writs Act. *See Wolfel,* 972 F.2d at 718 (noting that Ohio has not waived its sovereign immunity); *In re Baldwin-United Corp.*, 770 F.2d 328, 340 (2d Cir. 1985) ("The All Writs Act, which is itself limited by the jurisdiction of the federal courts, cannot be used to circumvent or supersede the constitutional limits of the Eleventh Amendment.").

That leaves only the exception set forth in *Ex parte Young,* which allows "claims for [prospective] injunctive relief against individual state officials in their official capacities." *Carten v. Kent State Univ.,* 282 F.3d 391, 395 (6th Cir. 2002). The *Ex parte Young* exception is a "narrow" one, *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 76 (1996), that is clearly inapplicable here because Petitioners expressly disclaim any intent to seek injunctive or declaratory relief, prospective or otherwise. *See* Am. Petition at ¶ 223, Doc. 12 at PageID 435 ("Petitioners argue that injunctive and/or declaratory relief is inapplicable or inappropriate in this issue . . . ."); *id.* at Wherefore Clause, Doc. 12 at PageID 443-444 (requesting relief only by way of mandamus).

No exception to Eleventh Amendment immunity applies in this case, and accordingly, the claims against the Ohio Respondents should be dismissed.

### D.    Petitioners have failed to state a valid claim under the All Writs Act.

As explained above, the Petition should be dismissed for lack of standing and because of sovereign immunity. Additionally, Petitioners' claim against the Ohio Respondents fails as a matter of law. This is a separate and independently sufficient reason for dismissing the Petition.

10

Petitioners purport to bring a claim under the All Writs Act, 28 U.S.C. § 1651. This Act allows federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). According to Petitioners, the Act gives the Court authority to issue a writ of mandamus against the Ohio Respondents. Petitioners' requested writ of mandamus has four prongs: (1) an order that the Ohio Respondents "ministerially correct" errors in the 2022 elections data and assure the Court that those errors will not recur; (2) an order that the Ohio Respondents "may not certify the 2024 General Election;" (3) an order that the Ohio Respondents "submit voter registration requests . . . to the Department of Homeland security to verify" citizenship; and (4) an order that the Ohio Respondents "perform their duties as the law intended." Petition at Wherefore Clause, Doc. 12 at PageID 443-44.

Petitioners' claim under the All Writs Act is infirm in every respect. Their requested writ is not "in aid of" this Court's existing jurisdiction. 28 U.S.C. § 1651(a). The requested writ is not "necessary or appropriate" to resolve any claim over which this Court has jurisdiction. *Id*. And finally, the writ is not "agreeable to the usages and principles of law" relating to a writ of mandamus. *Id.* Standing alone, any of these defects would be fatal.

### 1. The requested writ of mandamus is not "in aid of" a matter over which this Court has jurisdiction.

We begin with the requirement that a writ under the All Writs Act must issue "in aid of" a federal court's jurisdiction. In plain terms, this requirement means that the All Writs Act is not itself an independent source of jurisdiction. *See, e.g.*, *Clinton v. Goldsmith*, 526 U.S. 529, 535 (1999) ("[T]he Act does not enlarge . . . jurisdiction."); *United States v. Denedo*, 556 U.S. 904, 913 (2009) ("[T]he All Writs Act and the extraordinary relief the statute authorizes are not a source of subject-matter jurisdiction."); *Baze v. Parker*, 632 F.3d 338, 345 (6th Cir. 2011) ("Notably, the

11

statute does not provide federal courts with an independent source of jurisdiction to issue writs . . . ."). Put another way, a federal court must have "an independent basis for subject matter jurisdiction for a writ . . . to be issued pursuant to" the All Writs Act. *Maczko v. Joyce*, 814 F.2d 308, 310 (6th Cir. 1987).

The All Writs Act does not supply Petitioners with a stand-alone cause of action that confers federal jurisdiction. And the petition includes no independent source of jurisdiction over the Ohio Respondents. Petitioners quote from the NVRA and HAVA liberally, but they chose *not* to attempt to invoke this Court's jurisdiction under either statute. *See, e.g.*, Am. Petition at ¶¶ 210-257, Doc. 12 at PageID 442-432 (bringing claims solely under the All Writs Act and the Federal Mandamus Act). Nor can Petitioners rely on their claim under the Federal Mandamus Act, 28 U.S.C. § 1361, as a source of jurisdiction. *See id.* at ¶¶ 244-250, Doc. 12 at PageID 439-441. That act confers jurisdiction to district courts in "any action in the nature of mandamus to compel *an officer or employee of the United States* . . . to perform a duty owed to the plaintiff." 28 U.S.C. § 1361 (emphasis added). District courts do not have jurisdiction under the Federal Mandamus Act to issue writs to state actors. *See, e.g.*, *Privett v. Pellegrin*, No. 85-5049, 1986 U.S. App. LEXIS 19191, at *3 (6th Cir. Apr. 17, 1986) ("Section 1361 confers jurisdiction only over mandamus actions to compel action by federal, not state, officials or employees."). And of course, no state-law claim in the petition provides an independent basis for jurisdiction because they are all barred by sovereign immunity. *Ernst*, 427 F.3d at 368.

In short, Petitioners chose to assert a claim against the Ohio Respondents solely under the All Writs Act. This choice proves fatal because the All Writs Act is not an independent source of jurisdiction. And without an independent source of jurisdiction, Petitioners' claim under the All Writs Act fails as a matter of law.

### 2. The requested writ of mandamus is not "necessary or appropriate" to the resolution of a claim over which this Court has jurisdiction.

A writ will not issue under the All Writs Act unless it is "necessary or appropriate in aid of" the federal court's resolution of a matter over which it has jurisdiction. *Shoop v. Twyford*, 596 U.S. 811, 814 (2022). That is, the existence of independent federal jurisdiction is not enough to invoke the All Writs Act. The Act justifies the issuance of a writ only when "doing so would aid [the federal court's] adjudication of the" the matter within the court's jurisdiction. *Id*. at 822.

A recent example from the Supreme Court illustrates this principle in action. A federal district court properly exercised jurisdiction over a federal habeas case. *Id*. at 815-16. In furtherance of its jurisdiction over that claim, the court issued a writ ordering the transportation of the prisoner to a medical facility for testing. The district court premised its ruling on the All Writs Act, claiming that the transportation order would "aid its adjudication of [the prisoner's] habeas petition." *Id*. at 822. The Supreme Court disagreed. The prisoner failed to show how the results of any medical testing would even be admissible in his federal habeas proceeding, let alone necessary to its resolution. *Id*. at 822-23. Without the possibility of contributing to his habeas claim, the transportation order was not "necessary or appropriate in aid of" resolving that claim, and the district court lacked the authority to issue such an order under the All Writs Act. *Id*. at 824.

Applying these principles here, Petitioners fail to show that the All Writs Act permits the issuance of the requested writ of mandamus. To begin, as set forth above, Petitioners *do not* assert any independent claims within the jurisdiction of this Court that would justify the issuance of a writ that is "necessary or appropriate in aid of" its jurisdiction. 28 U.S.C. § 1651(a).

But even if the Court overlooks this dispositive failure, the requested writ of mandamus would not be "necessary or appropriate in aid of" any claims Petitioners *could* assert that fall within

the Court's jurisdiction.[2] Take the NVRA, for example. Petitioners note that the NVRA requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters." Petition ¶ 107, Doc. 1 at PageID 22 (quoting 52 U.S.C. § 20507(a)(4)). But Petitioners do not allege that Ohio fails to conduct the list maintenance required by the NVRA. And in fact, the United States Supreme Court found that Ohio's list-maintenance procedures comply with the NVRA. *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 760 (2018). Petitioners do not even mention this decision, much less explain how any claim that Ohio violates the NVRA survives it. Instead, Petitioners complain that Ohio falls short of the NVRA's purpose "to ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b)(4). This generalized grievance could not support a claim under the NVRA.

As to HAVA, Petitioners allege that Ohio does not meet the benchmark standards set in that statute. Specifically, Petitioners allege that widespread errors in the voter-registration lists led to the counting of thousands of votes by illegally registered voters, which exceeded the "error rates" contemplated by HAVA for "voting systems." *See, e.g.*, Am. Petition ¶¶ 27-35, Doc. 12 at PageID 393-394. This allegation—and others like it in the petition—simply has nothing to do with HAVA. HAVA requires "voting systems" to comply with standards issued by the Federal Election Commission, including error rates. Under HAVA, "voting systems" are equipment used to "define ballots," "cast and count votes," "report or display election results," and "maintain and produce any audit trail information." 52 U.S.C. § 21081(b)(1)(A)-(D). A voter-registration list is not a "voting system" under HAVA. Accordingly, HAVA has nothing to say about error rates for voter-

---

[2] Petitioners could not assert any claim under the Federal Mandamus Act or the state laws cited in their petition against any State Defendant in federal court. *Privett*, 1986 U.S. App. LEXIS 19191, at *3; *Ernst*, 427 F.3d at 368.

registration lists. Rather, HAVA's standards relate solely to the counting of ballots by machines manufactured for that express purpose.

Petitioners also miss the mark on their request for an order requiring the Ohio Respondents to submit voter registration requests to the U.S. Department of Homeland Security to verify individuals' citizenship status. Petition at Wherefore Clause, Doc. 12 at PageID 443-444. Petitioners cite 8 U.S.C. §§ 1644 and 1373(c) to support this request. *Id*. Section 1373(c) imposes an obligation only on the federal government, that it must respond to inquiries from states seeking to verify or ascertain an individual's citizenship status. Section 1644 simply provides that communication between the state and federal governments about the enforcement of immigration laws may not be prohibited or restricted. Neither statute supports a claim that Petitioners could assert against the Ohio Respondents.

Even if Petitioners could assert valid claims under the NVRA or HAVA,[3] a more fundamental problem forecloses the relief they request here. Petitioners cannot show that their requested writ of mandamus would be "necessary or appropriate" in resolving those claims under the All Writs Act. There is no allegation, for example, that the requested writ of mandamus is needed to effectuate a court order enforcing the NVRA or HAVA. *United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977) ("This Court has repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained . . . ."). There is no allegation that a writ of mandamus would help Petitioners secure probative evidence for an NVRA or HAVA claim. *Cf. Shoop*, 596 U.S. at 821. Petitioners appear

---

[3] Even if Petitioners had attempted to bring a claim under HAVA, that statute does not provide a private right of action. Instead, it authorizes an action by the U.S. Attorney General or state-based administrative complaints. 52 U.S.C. §§ 21111-21112.

to seek the writ as an end in itself, unconnected to any matter within the Court's jurisdiction. But that is not how the Act works. The requested writ must be "necessary or appropriate in aid of" resolving a matter over which the Court has jurisdiction. It is not a device for Petitioners to impose their will through a federal court's orders.

### 3. Petitioners' requested writ is not agreeable to the usages and principles of law because the requested relief exceeds the permissible scope of a writ of mandamus.

Even if Petitioners could overcome the deficiencies described above, they still cannot show that their requested writ of mandamus is "agreeable to the usages and principles of law" governing that writ. 28 U.S.C. § 1651.

To determine whether a writ requested under the All Writs Act is "agreeable to the usages and principles of law," federal courts "look first to the common law" governing that writ. *Rawlins v. Kansas*, 714 F.3d 1189, 1196 (10th Cir. 2013). In *Rawlins*, for example, petitioner requested a writ of coram nobis under the Act. The court therefore examined the common-law scope of the writ, noting that the common-law writ of coram nobis—a writ allowing a court to revisit a prior judgment—could only issue from the court entering the initial judgment. *Id*. Because the district court did not "pronounce the judgment" against the petitioner, it "ha[d] no power" to issue a writ of coram nobis under the All Writs Act. *Id*. Stated differently, a writ issued under the Act cannot exceed the scope of that writ at common law.

Here, Petitioners request a writ of mandamus, so the Court must look to the federal common law governing writs of mandamus. There, it will find several insuperable barriers to Petitioners' requested relief. First, the Sixth Circuit has stated in plainest terms that "federal courts have no authority to issue writs of mandamus to direct state courts or their judicial officers in the performance of their duties." *Haggard v. Tennessee*, 421 F.2d 1384, 1386 (6th Cir. 1970). That rule extends to state officials generally. *See In re Schied*, No. 08-1895, 2008 U.S. App. LEXIS

16

18548, at *3 n.2 (6th Cir. Aug. 5, 2008). Second, a writ of mandamus may not issue when petitioners have "adequate alternative means to obtain the relief they seek." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1078 (6th Cir. 1996).

Under these binding precedents, no writ of mandamus can issue against the Ohio Respondents. First, the Court simply lacks authority to issue a writ of mandamus to the Ohio Respondents to direct their performance of election-related duties. *Haggard*, 421 F.2d at 1386. And second, Petitioners can obtain relief through alternative means. *Am. Med. Sys.*, 75 F.3d at 1078. Petitioners complain that Ohio's voter-registration lists are rife with errors. Ohio law gives them an avenue to challenge the right to vote of any registered elector. *See* Ohio Rev. Code § 3503.24(A) ("Application for the correction of any precinct registration list or a challenge of the right to vote of any registered elector may be made by any qualified elector at the office of the board of elections not later than the thirtieth day before the day of the election."). That Petitioners have not attempted to use this process is telling. This is not a good-faith effort to clean up voter-registration lists; this is an attempt to usurp power over Ohio's elections.

To recapitulate, the All Writs Act includes three requirements. The requested writ must be (1) necessary and appropriate (2) in aid of the Court's jurisdiction and (3) agreeable to the usages and principles of law. 28 U.S.C. § 1651. Petitioners fall woefully short on all three requirements, and their claim must be dismissed.

## IV. CONCLUSION

For the reasons set forth above, the Ohio Respondents request that the amended petition be dismissed.

17

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ Ann Yackshaw*
ANN YACKSHAW (0090623)
   *Counsel of Record*
HEATHER L. BUCANAN (0083032)
STEPHEN P. TABATOWSKI (0099175)
MARK D. TUCKER (0036855)
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, OH 43215-3428
Tel: (614) 466-2872 | Fax: (614) 728-7592
Ann.Yackshaw@OhioAGO.gov
Heather.Buchana@OhioAGO.gov
Stephen.Tabatowski@OhioAGO.gov
Mark.Tucker@OhioAGO.gov

*Counsel for Respondents Ohio Secretary of State*
*Frank LaRose and Ohio Attorney General Dave Yost*

18

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2024, a copy of the foregoing *Motion to Dismiss Amended Complaint* was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties have access to this filing through the Court's system.

/s/ Ann Yackshaw
ANN YACKSHAW (0090623)
Assistant Attorney General

## CERTIFICATE OF COMPLIANCE

Pursuant to Northern District of Ohio Local Civil Rule 7.1(f), I hereby certify that this case has not been assigned to a track. This memorandum complies with the page limitations for unassigned cases.

/s/ Ann Yackshaw
ANN YACKSHAW (0090623)
Assistant Attorney General

19