Bruce L. Castor, III
NDOH I.D. No.: 0103252
Thomas A. Will & Associates
6000 Town Center Boulevard, Suite 106
Canonsburg, Pennsylvania 15317
Telephone: (412) 281-5110
Facsimile: (412) 315-7708
Email: bcastor@thomasawill.com

*Counsel for Petitioners*

---

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO – EASTERN DIVISION

---

| | |
|---|---|
| UNITED SOVEREIGN AMERICANS, INC.<br>167 Lamp and Lantern Village, Suite 194<br>Chesterfield, Missouri 63017<br><br>*And*<br><br>COALITION OF CONCERNED VOTERS<br>OF OHIO<br>P.O. Box 99<br>Dublin, Ohio 43017<br><br>*And*<br><br>JAMES RIGANO<br>8786 Wildwood Place<br>Springboro, Ohio 45066<br><br>*And*<br><br>CARRIE PERKINS<br>3790 White Oak Lane<br>Wooster, Ohio 44691<br><br>*And*<br><br>JACQUELINE LOUGHMAN<br>1213 Maryland Avenue SW<br>Canton, Ohio 44710 | CIVIL ACTION<br><br>Case No.: 5:24-cv-01359<br><br><br>Judge John R. Adams<br><br>Magistrate Judge Amanda M. Knapp<br><br><br>**PETITIONERS' RESPONSE IN OPPOSITION TO RESPONDENTS OHIO SECRETARY OF STATE FRANK LAROSE AND OHIO ATTORNEY GENERAL DAVE YOST'S MOTION TO DISMISS AMENDED PETITION** |

*And*

JOSEPH HEALY
721 Bulen Avenue
Columbus, Ohio 43205

*And*

MARY ANN BREJ
10723 Grand Prairie Lane
Strongsville, Ohio 44136

*Petitioners,*

v.

FRANK LAROSE, IN HIS OFFICIAL
CAPACITY AS THE OHIO SECRETARY
OF STATE
180 Civic Center Drive
Columbus, Ohio 43215

*And*

DAVE YOST, IN HIS OFFICIAL CAPACITY
AS ATTORNEY GENERAL OF OHIO
Rhodes State Office Tower
30 East Broad Street, 14th Floor
Columbus, Ohio 43215

*And*

MERRICK GARLAND, IN HIS OFFICIAL
CAPACITY AS ATTORNEY GENERAL OF
THE UNITED STATES
950 Pennsylvania Avenue NW
Washington, District of Columbia 20530

*Respondents.*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES............................................................................................ iv

MEMORANDUM IN SUPPORT....................................................................................1

I.     SUMMARY OF ARGUMENT.................................................................1

II.    ARGUMENT.............................................................................................3

    A.  The Amended Complaint contains allegations sufficient to invoke federal jurisdiction ....................................................................................................3

    B.  Petitioners' claims are not barred by Eleventh Amendment sovereign immunity protection by virtue of the *Ex parte Young* exception..............................................8

    C.  Petitioners have stated a valid claim under the All Writs Act, as state election officials become quasi-federal officers subject to Congressional oversight when regulating and administering federal elections, and therefore *mandamus* relief under the All Writs Act is the only remedy available to adjudicate Petitioners' claims ...................................................................................................10

III.   CONCLUSION.........................................................................................16

CERTIFICATE OF SERVICE ........................................................................................17

# TABLE OF AUTHORITIES

**Cases**            **Page(s)**

*Anderson v. United States,*
417 U.S. 211 (1974) ...................................................................................................11, 12

*Baker v. Carr,*
369 U.S. 186 (1962) ...............................................................................................................4

*Cheney v. United States Dist. Ct.,*
542 U.S. 367 (2004) .......................................................................................................13, 14

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013) ...............................................................................................................3

*Ex parte Young,*
209 U.S. 123 (1908) ...........................................................................................1, 2, 8, 9, 10

*Federal Election Comm'n v. Akins,*
524 U.S. 11 (1998) ............................................................................................................3, 4

*Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
528 U.S. 167 (2000) ...............................................................................................................5

*Gill v. Whitford,*
585 U.S. 48 (2018) .................................................................................................................3

*Gillis v. U.S. Dept. of Health and Human Servs.,*
759 F.2d 565 (6th Cir. 1985) .................................................................................................5

*Gomillion v. Lightfoot,*
364 U.S. 339 (1960) .............................................................................................................11

*Gray v. Sanders,*
372 U.S. 368 (1963) .........................................................................................................3, 11

*Havens Realty Corp. v. Coleman,*
455 U.S. 363 (1982) ...............................................................................................................5

*Hollingsworth v. Perry,*
558 U.S. 183 (2010) .............................................................................................................13

*In re: Coy,*
127 U.S. 731 (1888) .............................................................................................................11

**Cases**                                                                                          **Page(s)**

*League of Women Voters of Ohio v. Brunner,*
    548 F.3d 463 (6th Cir. 2008) .................................................................................8

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ...............................................................................1, 3, 4

*Massachusetts v. Envtl. Prot. Agency,*
    549 U.S. 497 (2007) .................................................................................4

*McKay v. Thompson,*
    226 F.3d 752 (6th Cir. 2000) .................................................................9

*Memphis A. Philip Randolph Inst. v. Hargett,*
    2 F.4th 548 (6th Cir. 2021) .....................................................................3

*Oregon v. Mitchell,*
    400 U.S. 112 (1970) ...............................................................................12

*Papasan v. Allain,*
    478 U.S. 265 (1986) .................................................................................9

*Reynolds v. Sims,*
    377 U.S. 533 (1964) ...............................................................................11

*Russell v. Lundergan-Grimes,*
    784 F.3d 1037 (6th Cir. 2015) ...............................................................9

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016) .................................................................................3

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009) .................................................................................5

*Telespectrum v. Public Service Comm'n,*
    227 F.3d 414 (6th Cir. 2000) .................................................................9

*Tenn. Republican Party v. Sec. and Exch. Comm'n,*
    863 F.3d 507 (6th Cir. 2017) .................................................................5

*United States v. Slone,*
    411 F.3d 643 (6th Cir. 2005) .................................................................11

*Verizon Md., Inc. v. Public Serv. Comm'n of Md.,*
    535 U.S. 635 (2002) .............................................................................2, 9

**Cases**                                                                                                      **Page(s)**

*Wilbur v. United States,*
   281 U.S. 206 (1930)...........................................................................................................13


**Statutes**                                                                                                   **Page(s)**

28 U.S.C. § 1331 .................................................................................................................14

28 U.S.C. § 1367(a) ............................................................................................................14

28 U.S.C. § 1651(a) ...............................................................................................2, 10, 13, 14, 15

52 U.S.C. §§ 20501 *et seq*...................................................................................................2

52 U.S.C. §§ 20501(b)(3)-(4) ...........................................................................................12

52 U.S.C. § 20507(a)(4) .....................................................................................................12

52 U.S.C. §§ 20901 *et seq*.................................................................................................2

52 U.S.C. § 21081(a)(1)(A)(ii) .........................................................................................12

52 U.S.C. § 21081(a)(5) .....................................................................................................12

52 U.S.C. § 21083(a)(1)(A) ...............................................................................................13

R.C. § 3501.04 ....................................................................................................................13

R.C. § 3503.151(A)..............................................................................................................13

R.C. § 3503.24(A).................................................................................................................15


**Other Authorities**                                                                                          **Page(s)**

U.S. Const. art. I, § 4...........................................................................................2, 10, 12, 14, 15

U.S. Const. art. I, § 8, cl. 18..............................................................................................11, 12

U.S. Const. art. III, § 2 ........................................................................................................3

U.S. Const., Eleventh Amendment .........................................................................1, 2, 8, 9, 10

## MEMORANDUM IN SUPPORT[1]

### I.    SUMMARY OF ARGUMENT

Respondent, Ohio Secretary of State Frank LaRose (*hereinafter* "Respondent"), asserts that this Court lacks subject-matter jurisdiction in the above-captioned matter because Petitioners, United Sovereign Americans, Inc. (*hereinafter* "USA"), Coalition of Concerned Voters of Ohio (*hereinafter* "CCVO"), James Rigano, Carrie Perkins, Jacqueline Loughman, Joseph Healy, and Mary Ann Brej (*collectively* "Petitioners"), lack Article III standing. A complaint must simply *allege* standing; standing need not be *proven* at the pleading stage. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Standing ultimately requires injury, causation, and redressability, all of which are alleged in the Amended Complaint. Qualified voters have constitutionally protected voting rights, and that an official's failure to adhere to state and federal election laws amounts to a deprivation of that legally protected interest. These principles fit squarely within the purview of Petitioners' allegations. Petitioners alleged actions by Respondent which caused injury to their right to vote, and to access public information. As further adduced below, the Amended Complaint appropriately alleges a particularized injury and imminent risk of future harm rather than a generalized grievance shared by the community. It is thus clear that Petitioners possess standing to invoke federal jurisdiction.

Respondent also contends that Petitioners' claims are barred by the Eleventh Amendment, which ordinarily affords sovereign immunity to state officials. However, Eleventh Amendment sovereign immunity is subject to several exceptions, including that established by the Supreme Court in *Ex parte Young*, which Respondent only briefly addressed. 209 U.S. 123 (1908). The

---

[1] To the extent that Respondent Ohio Attorney General Dave Yost claims that he possesses no authority delegated to him by the Ohio General Assembly conferring on him supervisory and/or administrative powers over federal elections, Petitioners concede that he is not subject to this Court's jurisdiction here.

*Young* exception properly permits lawsuits against state officials in their official capacities where a plaintiff alleges an ongoing violation of federal law and seeks prospective relief as a means of addressing that violation. *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). Here, the *mandamus* relief Petitioners request in the Amended Complaint is prospective, and therefore *Young* does not allow Respondent to invoke Eleventh Amendment sovereign immunity as a means of precluding Petitioners' claims.

Lastly, Respondent contends that Petitioners have failed to state a valid claim under the All Writs Act because the requested relief is not "in aid of" a matter over which this Court has jurisdiction, *mandamus* is not "necessary or appropriate" to resolve Petitioners' claims, and such exceeds the permissible scope of a writ of *mandamus*. As Respondent argues that he is not required to comply with Congressional mandates simply because he is a state official, this is a case of first impression, and accordingly the cases cited in support of Respondent's argument offer little guidance. By including language in the Elections Clause, U.S. Const., art. I, § 4, the Framers reserved to Congress the ultimate authority to regulate statewide federal elections. Congress has employed this power through legislation such as the National Voter Registration Act[2] (*hereinafter* "NVRA"), and the Help America Vote Act[3] (*hereinafter* "HAVA"). Further, by enacting the All Writs Act, 28 U.S.C. § 1651(a), Congress created an enforcement mechanism by which federal courts are empowered to compel state election officials to comply with acts of Congress within the purview of federal elections. Petitioners argue that state election officials become quasi-federal officers subject to Congressional oversight when carrying out their delegated duties to regulate and administer federal elections, and therefore the requested writ of *mandamus* is both appropriate *and* necessary to properly adjudicate Petitioners' claims.

---

[2] 52 U.S.C. §§ 20501 *et seq.*
[3] 52 U.S.C. §§ 20901 *et seq.*

## II.    ARGUMENT

### A. The Amended Complaint contains allegations sufficient to invoke federal jurisdiction.

Article III limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. "One element of the case-or-controversy requirement [of Article III] is that plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (internal citations and quotation marks omitted). To invoke federal jurisdiction, a plaintiff must satisfy the "irreducible" minimum requirements of Article III standing: (1) injury-in-fact; (2) causation; and (3) redressability. *Lujan*, 504 U.S. at 560-561. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). In other words, the injury must affect the "plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560. *See Gill v. Whitford*, 585 U.S. 48, 65 (2018) ("a person's right to vote is individual and personal in nature") (internal citation and quotation marks omitted). The injury must also be actual or imminent, not speculative, meaning the injury must have already occurred or be likely to occur in the near future. *Clapper*, 568 U.S. at 409. Importantly, "if one party has standing, then identical claims brought by other parties to the same lawsuit are also justiciable." *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 555 (6th Cir. 2021).

It is a well-recognized principle that any person whose right to vote has been impaired has standing to sue. *Gray v. Sanders*, 372 U.S. 368, 375 (1963). Qualified voters have a constitutionally protected right to cast their ballots and have their votes counted and reported correctly, undiluted by illegal ballots. *Id.* at 380. As stated by the Supreme Court regarding voting rights, "the most basic of political rights, [are] sufficiently concrete and specific" to establish standing. *Federal*

3

*Election Comm'n v. Akins*, 524 U.S. 11, 24 (1998). Respondent argues that Petitioners' claims amount to mere generalized grievances concerning improper government conduct and therefore have failed to establish Article III standing. Generalized grievances in the context of standing refer to instances where a plaintiff's harm concerns "his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large." *Lujan*, 504 U.S. at 573. However, the Supreme Court has previously held that a group of qualified voters alleging that a state's action diminished the effectiveness of their vote *did not* amount to a generalized grievance. *Baker v. Carr*, 369 U.S. 186, 208 (1962).

While persons do not have standing to sue when they claim an injury that is suffered by all members of the public, "where the harm is concrete, though widely shared, the Court has found 'injury in fact.'" *Akins*, 524 U.S. at 24. The Supreme Court has been clear that "where large numbers of voters suffer interference with voting rights..." the interests related to that are sufficiently concrete to obtain the standing necessary to seek redress under Article III. *Id.* In *Massachusetts v. Envtl. Prot. Agency*, the "...EPA maintain[ed] that because greenhouse gas emissions inflict widespread harm, the doctrine of standing presents an insuperable jurisdictional obstacle." 549 U.S. 497, 517 (2007). The Court found that the "EPA's steadfast refusal to regulate greenhouse gas emissions presents a risk of harm to Massachusetts that is both 'actual' and 'imminent.'" *Id.* at 498-499. Here, harms implicating voting rights are generally widespread and affect many people. However, these injuries are of a type still reviewable by federal courts under Article III, as demonstrated by the cases cited above.

The Supreme Court has stated that when a plaintiff is a group or organization representing several persons with similar injuries, such "representational standing" exists when an

organization's "members would otherwise have standing to sue in their own right, the interests at stake are germane to that organization's purpose, and neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000); *Gillis v. U.S. Dept. of Health and Human Servs.*, 759 F.2d 565, 579 (6th Cir. 1985). Additionally, an organization can assert an injury in its own right when a defendant's actions impede efforts to promulgate its organizational mission. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). To establish such organizational standing, the organization must advance allegations identifying at least one (1) member who has suffered or will suffer injury. *Tenn. Republican Party v. Sec. and Exch. Comm'n*, 863 F.3d 507, 520 (6th Cir. 2017). However, the specificity requirements do not mandate identification of all individuals who were harmed if "*all* the members of the organization are affected by the challenged activity." *Id.* (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 498-99 (2009)).

The Amended Complaint plainly alleges standing sufficient to establish subject-matter jurisdiction under Article III. Respondent argues that Petitioners lack Article III standing for failure to allege an injury-in-fact with requisite specificity as to the deprivation of a legally protected interest and the imminent risk of future harm. Consider that James Rigano, a qualified voter in Ohio, along with USA and CCVO, sent multiple written inquiries to state election officials requesting information relative to the state's election law compliance. Ohio officials rebuffed these efforts. Consider further, Carrie Perkins, a candidate for the Triway School Board in 2023, lost her election by four (4) votes, a margin of defeat significantly lower than Ohio's 2022 voter system error rate of fourteen percent (14%) as alleged in the Amended Complaint. So too Jacqueline Loughman, a qualified voter and poll worker in Ohio, raised issues with the local board of elections

regarding her inability to reconcile the machine vote. Ohio election officials under Respondent told her to submit the voting materials for tabulation as part of the official count *without completing the audit*, thereby preventing her from performing her duties, a portion of which was to make sure the voting machine totals "squared" with other available data relative to that machine. Joseph Healy and Mary Ann Brej, both qualified voters in Ohio, cast their ballots in counties with the highest registration and voting violations as alleged in the Amended Complaint, thus diluting their own votes assuming the allegations in the Amended Complaint are true.

Petitioners have attempted to obtain additional information concerning the cause of the various violations in these counties and throughout Ohio to ascertain the severity of the issues addressed herein and in the Amended Complaint. However, Respondent along with Ohio election officials working under the direction of Respondent consistently denied Petitioners' requests. Respondent's assertion that Petitioners lack standing by virtue of Petitioners' failure to assert a legally cognizable injury, and likelihood of *future* harm in *subsequent* federal elections administered by Respondent, ignores the factual allegations Petitioners have plainly stated in the Amended Complaint. Am. Petition at ¶¶ 170-209, Doc. 12 at PageID 424-432.

Turning to the issue of whether Petitioners' injury constitutes simply a generalized grievance shared by the whole community, Petitioners suggest it was not the whole community that sent written inquiries to agents of Respondent requesting transparency as to Ohio's compliance with federal election laws and explanations regarding documented voter and registration irregularities. In the same vein, Respondent did not deny the whole community of such requests. Respondent denied Petitioners' requests specifically. The whole community did not comb through innumerable pages of hard voter data to ascertain the accuracy of voter registration rolls, Petitioners did that. The whole community did not create a comprehensive report on apparent

registration and voting violations, Petitioners did. Petitioners, *not* Respondent, informed the whole community of these issues, and the whole community could not have realized them on its own. Petitioners, themselves, took these actions which distinguishes Petitioners from the community at large -- actions which are not in the abstract. Rather, Petitioners have advanced multiple and specific allegations concerning, *inter alia*, discrepancies in voting records, which suggest that this is not merely a speculative issue, but a very real problem causing Petitioners and Petitioners' members legitimate concerns over whether Ohio is counting and considering their votes in such a way that Petitioners' votes are undiluted.

In sum, for purposes of a Motion to Dismiss, the Amended Complaint states a sufficiently plausible cause of action, at the early stages of litigation, to confer presumptive standing upon Petitioners. Petitioners set forth in the Amended Complaint a series of factual allegations establishing that named Petitioners are individuals qualified to vote in Ohio whose votes were diluted in 2022 through Respondent's failure to ensure that Ohio's voting systems and voter registration records meet certain federal standards prior to certification. Ohio, through Respondent, received notice of these apparent errors and did not take sufficient (or any) actions to investigate the cause, reasonably leading Petitioners to believe that the same (or similar) apparent errors will recur in 2024, 2026, and in every subsequent federal election if Respondent fails to investigate and, where warranted, correct these anomalies going forward. Petitioners have identified said anomalies and brought them to the attention of Ohio election officials who bear the responsibility delegated by the General Assembly to regulate federal elections. Respondent and his agents have failed to investigate and address these anomalies, despite that being Respondent's job to do. No other means exist to require a government official to perform his duties apar from a writ of *mandamus*.

Petitioners have brought this action in an effort to require, through court order, the state of Ohio to investigate and take appropriate action concerning the apparent errors Petitioners have brought to Respondent's attention. Petitioners do not seek this Court to order Respondent *how* to perform his job. Petitioners seek court intervention to require Respondent simply to *do* his job and take whatever action Respondent considers appropriate in order to comply with Congressional mandates. Petitioner will then ask this Court to order Respondent to report to this Court the reasons for such significant discrepancies, for example, how it is possible that in 2022, various Ohio county boards of elections could possibly have certified more votes than there are qualified voters. Am. Petition at ¶¶ 193-199, Doc. 12 at PageID 429-430. Petitioners have attempted to gain access to this information through other means, such as public information requests, but these requests have been repeatedly denied as alleged in the Amended Complaint. As outlined above, Petitioners have satisfied the injury-in-fact requirement under Article III, thereby conferring subject-matter jurisdiction upon this Court.[4]

B. Petitioners' claims are not barred by Eleventh Amendment sovereign immunity protection by virtue of the *Ex parte Young* exception.

The Eleventh Amendment affords sovereign immunity to government entities, subject to several exceptions. *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 474 (6th Cir. 2008). Ordinarily, then, citizens are precluded from filing federal lawsuits against state officials. *Id.* One such exception, pursuant to the doctrine announced in *Ex parte Young*, is applicable where "a state official is sued in his official capacity for purely injunctive relief." *Id.* (citing *Young*, 209 U.S. at 155-56). The applicability of *Young* concerns "whether [the] complaint alleges an ongoing

---

[4] While Petitioners maintain that USA and CCVO have organizational standing, as both exist for the sole purpose of preserving the integrity of federal elections and therefore the claims set forth in the Amended Complaint are directly tied to their respective organizational missions, neither organization is seeking a distinctive form of relief from the other named Petitioners, and as such each has standing in this action.

violation of federal law and seeks relief properly characterized as prospective." *Verizon*, 535 U.S. at 645; *Telespectrum v. Public Service Comm'n*, 227 F.3d 414, 419 (6th Cir. 2000). The focus of these inquiries pertain to the allegations only, and "does not include an analysis of the merits of the claim." *Verizon Md., Inc.*, 535 U.S. at 646.

In *Young*, the Supreme Court created a mechanism by which officials and government entities ordinarily afforded Eleventh Amendment protections are stripped of sovereign immunity in "specific situations in which it is necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to the supreme authority of the United States." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1049 (6th Cir. 2015) (quoting *Papasan v. Allain*, 478 U.S. 265, 277 (1986)). Especially relevant here, "[e]njoining a statewide official under *Young based on his obligation to enforce a law is appropriate when there is a realistic possibility the official will take legal or administrative actions against the plaintiff's interests*." *Russell*, 784 F.3d at 1048. (Emphasis added).

In support of his sovereign immunity argument, Respondent addresses the other Eleventh Amendment exceptions at length but only briefly discusses the *Young* doctrine. Respondent avers *Young*, however, is inapplicable to Petitioners' claims on the basis that Petitioners do not seek injunctive or declaratory relief, completely ignoring the nature of *mandamus*. Petitioners argue that *mandamus* relief and injunctive relief are functionally equivalent in the *Young* context, as both are forms of equitable relief and each form of relief is prospective in nature. Conversely, the *Young* exception is wholly inapplicable where a plaintiff is seeking monetary damages, which Petitioners notably have not done. *See McKay v. Thompson*, 226 F.3d 752, 757 (6th Cir. 2000) ("the Eleventh Amendment permits prospective injunctive relief, but not damage awards, for suits against individuals in their official capacities"). As such, Petitioners contend that the Supreme Court,

through *Young* and its progeny, did not mean to apply the exception to plaintiffs seeking declaratory and/or injunctive relief to the exclusion of those requesting other equitable relief such as that Petitioners seek here through *mandamus*.

It defies logic that Respondent contends, essentially, that since relief in *mandamus* is not the same as relief by injunction, the *Young* exception does not apply. Both injunctive relief and *mandamus* relief in the present context would seek this Court to order Respondent to perform his duties without alleging monetary damages. Respondent premises his argument on injunctive relief being a different form of relief than *mandamus* relief, but his argument fails because under the current factual pattern, the two (2) forms of equitable relief are functionally the same.[5] Accordingly, by application of the *Young* exception, Respondent is not afforded Eleventh Amendment sovereign immunity in this matter.

    C. Petitioners have stated a valid claim under the All Writs Act, as state election officials become quasi-federal officers subject to Congressional oversight when regulating and administering federal elections, and therefore *mandamus* relief under the All Writs Act is the only remedy available to adjudicate Petitioners' claims.

Under the Elections Clause, Congress conferred to individual state legislatures the authority to conduct statewide federal elections. U.S. Const. art. I, § 4. The Constitution's Framers' intent is clear upon a plain reading of the Constitution. The various states have *presumptive* authority to regulate and administer the election of all federal officers. However, by including the language "…but the Congress may at any time by Law make or alter such Regulations," the Framers clearly and unambiguously intended Congress retains the ultimate authority under the Constitution to regulate federal elections. U.S. Const. art. I, § 4. Thus, the Constitution spells out

---

[5] This is not to suggest that Petitioners might not later seek injunctive relief, but by pursuing an ultimately successful action in *mandamus* now, Petitioners hope to avoid having to seek an injunction later during the short time window between General Election day and the date by which Ohio must certify its results.

that the *default* authority to regulate federal elections lies with the several states in the absence of acts of Congress. This makes the states subordinate to Congress. The Framers *intentionally* intertwined the powers of the various states with those of Congress in the conducting of federal elections, while making certain Congress maintained the ultimate power over the selection of its own members, thereby carving out a narrow exception to the principles of dual sovereignty and federalism. Accordingly, since the Constitution reserves to Congress the *ultimate* power to regulate federal elections, while simultaneously delegating the *presumptive* power to individual state legislatures. The Ohio General Assembly has further delegated the state's power to regulate federal elections to the Office of the Secretary of State. Respondent, though not a federal officer *per se*, Constitutionally and by necessity, becomes a quasi-federal officer as an agent of the Ohio General Assembly. He thus is required to carry out federal election statutes passed by Congress, including HAVA and NVRA. In fact, he has no choice but to do so.

While a state official, generally, is insulated from federal judicial review when exercising power within the exclusive domain of a state interest, "such insulation is not carried over when state power is used as an instrument for circumventing a federally protected right." *Gray*, 372 U.S. at 372 (citing *Gomillion v. Lightfoot*, 364 U.S. 339, 347 (1960)). Federal courts regard the right to vote in a fairly conducted election as federally protected, *Reynolds v. Sims*, 377 U.S. 533, 554-55 (1964), and the Supreme Court decreed that Congress has authority under the Constitution's Necessary and Proper Clause to regulate any activity during a mixed federal/state election that exposes the federal election process to potential misuse, whether that harm materializes or not. *In re: Coy*, 127 U.S. 731, 752 (1888); *United States v. Slone*, 411 F.3d 643, 647 (6th Cir. 2005). "Every voter in a federal…election…whether he votes for a candidate with little chance of winning or for one with little chance of losing, has a right under the Constitution to have his vote fairly

counted, without its being distorted by fraudulently cast votes. *Anderson v. United States*, 417 U.S. 211, 227 (1974). "[T]he right to vote freely for a candidate of one's choice is of the essence of a democratic society," *Oregan v. Mitchell*, 400 U.S. 112, 138-39 (1970). Congress chose to exercise its powers under the Elections Clause and the Necessary and Proper Clause to intervene in Ohio's otherwise absolute constitutional authority to regulate federal elections by enacting federal election laws including HAVA and NVRA. U.S. Const. art. I, § 4; U.S. Const. art. I, § 8, cl. 18.

Under HAVA, the two (2) provisions at issue impose mandatory language on election officials. For example, 52 U.S.C. § 21081(a)(5) states that the "error rate of [a] voting system in counting ballots…shall comply with the error rate standards established under section 3.2.1. of the voting systems standards issued by the Federal Election Commission[.]" Use of the word "shall" constitutes mandatory language. Furthermore, 52 U.S.C. § 21081(a)(1)(A)(ii) states voting systems "shall…provide the voter with the opportunity (in a private and independent manner) to change the ballot or correct any error before the ballot is cast and counted (including the opportunity to correct the error through the issuance of a replacement ballot if the voter was otherwise unable to change the ballot or correct any error.)" The use of "shall," again, constitutes mandatory language. Here, the requirement is for voting systems, but election officials subject to judicial authority are responsible for configuring and managing voting machines. NVRA likewise contains mandatory language. For example, "each State shall…conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of death of the registrant; or a change in the residence of the registrant." 52 U.S.C. § 20507(a)(4).

NVRA exists in part "to protect the integrity of the electoral process" and "to ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. §§ 20501(b)(3)-(4).

Similarly, HAVA mandates that voter roll databases contain only registrations of qualified citizen voters residing in that state. 52 U.S.C. § 21083(a)(1)(A). Maintaining the accuracy of voter rolls and voting systems, therefore, is required under the Constitution to uphold the right of the people to choose their representatives. The requirements of NVRA and HAVA are mirrored in Ohio's election laws. Under the Ohio Revised Code, the Secretary of State, as the chief election officer, oversees and regulates voter registration procedures and the conduct of elections throughout the state. R.C. § 3501.04. Further, the Secretary of State *must* maintain the accuracy of the statewide voter registration database. R.C. § 3503.151(A). Accordingly, the Secretary of State, acting in his capacity as a quasi-federal officer, must ensure compliance with NVRA and HAVA when regulating and administering federal elections. A writ of *mandamus* is the enforcement mechanism through which the Secretary of State can be held accountable to Congress for refusing to comply with Congressional legislation.

The All Writs Act grants this Court the power to "issue all writs necessary or appropriate in the aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). A writ of *mandamus* is warranted where the moving party establishes that "(1) no other adequate means [exist] to attain the relief he desires, (2) the party's right to issuance of the writ is clear and indisputable, and (3) the writ is appropriate under the circumstances." *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (quoting *Cheney v. United States Dist. Ct.*, 542 U.S. 367, 380-381 (2004)) (internal quotation marks omitted). Writs of *mandamus* apply to ministerial actions. A "ministerial action" is a duty in a particular situation so plainly prescribed, as is the case with respect to the mandatory HAVA and NVRA language cited above, as to be free from doubt and equivalent to a positive command. *Wilbur v. United States*, 281 U.S. 206, 218 (1930). *Mandamus* under the All Writs Act is a remedy reserved for extraordinary circumstances

where no other form of relief can adequately provide redress. *Cheney*, 542 U.S. at 369. Refusing to comply with federal election laws, in defiance of Congress, constitutes an extraordinary circumstance.

Here, Respondent argues that *mandamus* is not "necessary or appropriate" to the resolution of Petitioners' claims and is not agreeable to the usages and principles of law because the requested relief exceeds the permissible scope of a writ of *mandamus*.[6] Respondent cannot dispute that Congress delegated presumptive power to regulate and administer Ohio's federal elections to the Ohio General Assembly, or that the General Assembly delegated that power to him. Respondent cannot dispute Congress' ultimate authority to regulate federal elections under the Elections Clause. U.S. Const. art. I, § 4. Respondent cannot dispute that Congressional mandates under HAVA and NVRA are plainly within the scope of his duties as Ohio's chief election officer. It follows, then, that Respondent cannot dispute that he is required to conduct Ohio's federal elections in accordance with federal law. Nonetheless, Respondent argues that this Court cannot compel him through a writ of *mandamus* to answer to Congress for his failure to comply with HAVA and NVRA, in the administration of Ohio's 2022 General Election, simply because he is not a federal officer, an absurd result neither the Framers nor Congress intended.

The very purpose of the All Writs Act is to provide a remedy by which federal courts may rectify extraordinary circumstances such as those at issue here. But Respondent argues that, despite Congress' undisputed and superseding power to regulate federal elections, he is not required to comply with Congressional election legislation and therefore Petitioner cannot be afforded *mandamus* relief under the All Writs Act on the basis that he is not a federal official. In other words, according to Respondent, no Constitutional mechanism exists by which state election officers can

---

[6] Petitioners have established standing in this matter, as outlined above and under 28 U.S.C. §§ 1331 and 1367(a), and therefore the requested writ of *mandamus* is "in aid of" a matter over which this Court has jurisdiction.

be held accountable to Congress. Accepting Respondent's contention as true would lead to an absurd result, as Respondent would effectively be empowered to regulate and administer federal elections *without any Congressional oversight whatsoever*. The language of the Elections Clause clearly precludes this outcome, as Congress retained the ultimate authority to regulate federal elections. It follows that the All Writs Act exists as an enforcement mechanism through which Congress intended to enjoin state election officials from violating federal election legislation, including HAVA and NVRA.

Petitioners aver that Respondent's argument, therefore, must fail because, as a matter of Constitutional law, state election officials become quasi-federal officers subject to the enforcement provisions under the All Writs Act when regulating and administering federal elections. Here, *mandamus* relief is not merely "necessary or appropriate" to this Court's resolution of Petitioners' claims, it is the *only* remedy available to compel Respondent's subservience to Congress' ultimate authority to regulate federal election processes. Respondent's contention that Petitioners can obtain relief through alternative means is likewise unpersuasive, as R.C. § 3503.24(A), which concerns "challenging the right to vote of any registered elector," addresses only a fraction of the systemic issues raised in the Amended Complaint and offers no avenue by which a state tribunal could compel Respondent to follow federal election legislation for lack of jurisdiction. Motion to Dismiss, Doc. 13 at PageID 753. Only federal courts are empowered to resolve the whole of Petitioners' claims, and the only available remedy for purposes of adjudicating Petitioners' claims is the requested writ of *mandamus*.

## III.    CONCLUSION

Based on the foregoing, Petitioners respectfully request that this Court deny Respondent's

Motion to Dismiss in the above-captioned matter.

Respectfully submitted,

Date: <u>October 14, 2024</u>                    By:    _____

Bruce L. Castor, III
NDOH I.D. No.: 0103252
Thomas A. Will & Associates
6000 Town Center Boulevard, Suite 106
Canonsburg, Pennsylvania 15317
Telephone: (412) 281-5110
Facsimile: (412) 315-7708
Email: bcastor@thomasawill.com
*Counsel for Petitioners*

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2024, a copy of the foregoing Petitioners' Response in Opposition to Respondents Ohio Secretary of State Frank LaRose and Ohio Attorney General Dave Yost's Motion to Dismiss Amended Petition was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties have access to this filing through the Court's system.

_____
Bruce L. Castor, III
NDOH I.D. No.: 0103252
*Counsel for Petitioners*

## CERTIFICATE OF COMPLIANCE

Pursuant to Northern District of Ohio Local Civil Rile 7.1(f), I hereby certify that this case has not been assigned to a track. This memorandum complies with the page limitations for unassigned cases.

_____
Bruce L. Castor, III
NDOH I.D. No.: 0103252
*Counsel for Petitioners*