**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| UNITED SOVEREIGN | : | |
| AMERICANS, INC., et al, | : | |
| | : | |
| *Petitioner,* | : | **Case No. 5:24cv1359** |
| | : | |
| v. | : | **Judge John R. Adams** |
| | : | |
| STATE OF OHIO, et al., | : | **Magistrate Judge Amanda M. Knapp** |
| | : | |
| *Respondents.* | : | |

**RESPONDENTS OHIO SECRETARY OF STATE FRANK LAROSE AND OHIO
ATTORNEY GENERAL DAVE YOST'S REPLY IN SUPPORT OF THEIR MOTION
TO DISMISS AMENDED PETITION**

Nothing in Petitioners' opposition to the motion to dismiss of Ohio Attorney General Dave
Yost and Secretary of State Frank LaRose (the Ohio Respondents) does anything to remedy the
numerous defects in the Amended Petition. Petitioners lack standing, and the Ohio Respondents
are entitled to Eleventh Amendment immunity. Accordingly, the Court lacks subject-matter
jurisdiction over the Amended Petition. Finally, the Amended Petition fails to state a claim for
relief.

**I.      Petitioners have failed to state an injury sufficient to confer Article III standing.**

If there was ever a doubt that Petitioners have failed to allege a concrete, particularized
injury that might supply standing, their own opposition erases it. They admit that they sued "to
require Respondent [LaRose] simply to *do* his job and take whatever action Respondent considers
appropriate in order to comply with Congressional mandates." Opp., Doc. 14 at PageID 769
(emphasis in original). But federal courts do not entertain cases alleging speculative harm to a

general, commonly-shared interest in the government's compliance with the law. This Court should follow suit and dismiss the petition.

The Supreme Court's refusal to hear such cases has a "lengthy pedigree." *Lance v. Coffman*, 549 U.S. 437, 439 (2007). In 1922, the Court held that assertion of "the right, possessed by every citizen, to require that the Government be administered according to law" was "[o]bviously" insufficient to confer standing. *Fairchild v. Hughes*, 258 U.S. 126, 129 (1922). In 1937, the Court again confirmed that standing requires a plaintiff to have more than "a general interest common to all members of the public." *Ex parte Levitt*, 302 U.S. 633, 634 (1937). Nearly forty years later the Court "reaffirm[ed] *Levitt* in holding that standing to sue may not be predicated upon an interest of the kind alleged here which is held in common by all members of the public, because of the necessarily abstract nature of the injury all citizens share." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 220 (1974). More recently, the Court held four Colorado voters lacked standing to claim that the Colorado Constitution violated the Federal Constitution's Elections Clause by permitting a state court-drawn redistricting map. *Lance*, 549 U.S. at 441-42. Their only injury, "that the law—specifically the Elections Clause—has not been followed" was "precisely" the sort of "undifferentiated, generalized grievance about the conduct of government" which the Court has "refused to countenance in the past." *Id.* at 442. *Cf. TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2206 (2021) (a plaintiff "merely seeking to ensure a defendant's 'compliance with regulatory law'" is "not grounds for Article III standing") (citation omitted).

*Lance* also illustrates the problem with Petitioners' reliance on *Baker v. Carr*, 369 U.S. 186 (1962), where the injuries alleged were "quite different" from Petitioners' claims here. *See id.* (citing *Baker*, 369 U.S. at 207-08). Since the right to vote is "individual and personal in nature," *Reynolds v. Sims*, 377 U. S. 533, 561 (1963), only "voters who allege facts showing disadvantage

2

to *themselves as individuals* have standing to sue" to remedy that disadvantage, *Baker*, 369 U. S. at 206 (emphasis added). In *Baker*, the plaintiffs had standing to challenge a state apportionment statute under the Equal Protection clause because they alleged the statute "disfavors the voters in the counties in which they reside, placing them in a position of constitutionally unjustifiable inequality vis-a-vis voters in irrationally favored counties." *Id.* at 207-08. In other words, *Baker* does not provide blanket standing for any voter "alleging that state's action diminished the effectiveness of their vote" as Petitioners seem to claim. Opp., Doc. 14 at PageID 765. Article III standing still requires a concrete, particularized injury, and Petitioners have alleged none.

Nor does *FEC v. Akins*, 524 U.S. 11 (1998) help Petitioners. Indeed, *Akins* makes clear that injury to a widely-shared interest can only supply standing if that interest is "sufficiently concrete." *Id.* at 24. Concreteness and particularity are not cast aside merely because a plaintiff alleges that "'large numbers of voters suffer interference with voting rights.'" *See* Opp., Doc. 14 at PageID 765 (quoting *Akins*, 524 U.S. at 24). Take, for example, claims of racial gerrymandering—which is what Petitioners' quote from *Akins* was referencing. *Akins*, 524 U.S. at 24 (citing *Shaw v. Hunt*, 517 U.S. 899, 905 (1996)). A plaintiff who resides in a district which is the subject of a racial gerrymandering claim has standing to challenge the law creating that district, but "a plaintiff from outside that district lacks standing absent specific evidence that *he personally* has been subjected to a racial classification." *Shaw*, 517 U.S. at 904 (citing *United States v. Hays*, 515 U.S. 737 (1995)). Put another way, even though a gerrymandering injury is felt throughout a gerrymandered district, a district resident can allege a concrete and particularized but widely-felt harm because they reside there. A nonresident cannot. Indeed, *Akins* expressly distinguished between such claims and claims of "harm to the common concern for obedience to the law." *Akins*, 524 U.S. at 23 (cleaned up). Petitioners' claims are the latter—they allege an "injury to the interest in seeing that

3

the law is obeyed," and that "deprives the case of the concrete specificity" that is necessary to confer Article III standing. *See id.* at 24 (citations omitted).

Allegations of specific actions taken by Individual Petitioners, Opp., Doc. 14 at PageID 767-68, do not save their flawed petition. That is because Petitioners' injuries do not arise from "sen[ding] written inquiries to agents of Respondent," or from the "den[ial] of such requests." *Id.* at PageID 767. Instead, Petitioners allege a "constitutional harm brought upon them, and the Ohio electorate at large, by Respondents' failure to comply with federal and state election law" because Respondents will allegedly "permit the same apparent errors to occur in Ohio's 2024 General Election, and in all subsequent federal elections." Am. Compl. ¶ 210-11, Doc. 12 at PageID 432-33. Their allegations about informational inquiries are untethered to the constitutional injuries they actually claim and are nothing more than an attempt to muddy the waters.

Petitioners' representational standing arguments also carry no water. Everyone agrees that an organizational plaintiff can have associational standing where its members would otherwise have standing to sue in their own right. Opp., Doc. 14 at PageID 766. But Petitioners have an associational problem—they have failed to allege *anyone* who is one of their members. It's not that Petitioners have failed to identify "all individuals who were harmed" among their members, *id.*—it's that they have failed to identify *any* individuals who are members at all. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009) ("the [Supreme] Court has required plaintiffs claiming an organizational standing to *identify members* who have suffered the requisite harm") (emphasis added). Regardless, even if the Organizational Petitioners had done so, their members do not have standing to sue in their own right for the reasons discussed above.

Finally, the Organizational Petitioners have failed to allege organizational standing because they cannot "spend [their] way into standing based on speculative fears of future harm."

4

*Shelby Advocates for Valid Elections v. Hargett*, 947 F.3d 977, 981 (6th Cir. 2020) (citing *Clapper v. Amnesty Int'l*, 568 U.S. 398, 416 (2013)). They cannot conjure standing by "comb[ing] through innumerable pages of hard voter data" or "creat[ing] a comprehensive report on apparent registration and voting violations," Opp., Doc. 14 at PageID 767-68, because the future harms they have alleged are nothing more than conjecture. To be clear, they admit this: they argue diversion-of-resources standing because they created a comprehensive report, and in the same breath admit the report is on "apparent" violations of elections law. *Id.* Petitioners "are not seeking to undermine official elections results previously certified," Am. Compl., ¶ 210, Doc. 12 at PageID 432, because of those "apparent" violations. Rather, they simply "believe and therefore aver that it is reasonable to believe" that these phantom issues will occur in future elections. *Id.* ¶ 20, at PageID 391. The Sixth Circuit has foreclosed standing under these circumstances. *Shelby Advocates*, 947 F.3d at 981.

For the foregoing reasons, Petitioners have failed to sufficiently allege Article III standing and this Court lacks subject-matter jurisdiction to entertain their claims. Their Petition should be dismissed on this basis alone.

## II. The Eleventh Amendment bars Petitioners' claims.

In their memorandum in opposition, Petitioners acknowledge that the Eleventh Amendment ordinarily bars suits against states and state officials in federal court. Opp., Doc. 14 at PageID 769. Petitioners also concede that the state of Ohio has not consented to suit in federal court, and that Congress has not abrogated the State's immunity. *Id.* at PageID 770. *See Wolfel v. Morris,* 972 F.2d 712, 718 (6th Cir. 1992). Petitioners nevertheless argue that their claims in this case are not barred because (according to them) those claims fall within the *Ex parte Young* exception to Eleventh Amendment immunity for "claims for [prospective] injunctive relief against

individual state officials in their official capacities." *Carten v. Kent State Univ.,* 282 F.3d 391, 395 (6th Cir. 2002). *See Ex parte Young,* 209 U.S. 123 (1908). Not so.

Significantly, Petitioners acknowledge that they are not seeking injunctive relief. *See* Am. Petition at ¶ 223, Doc. 12 at PageID 435 ("Petitioners argue that injunctive and/or declaratory relief is inapplicable or inappropriate in this issue . . . ."); *id.* at Wherefore Clause, Doc. 12 at PageID 443-444 (requesting relief only by way of mandamus). Yet they nevertheless assert "that *mandamus* relief and injunctive relief are functionally equivalent in the *Young* context, as both are forms of equitable relief and each form of relief is prospective in nature." Opp., Doc. 14 at PageID 770 (emphasis in original). Petitioners' argument fails on a fundamental level.

Petitioners' admission that they are not seeking prospective injunctive relief is dispositive of the issue of the Ohio Respondent's Eleventh Amendment immunity. That is because, as discussed further below, a federal court is not empowered under either the All Writs Act, 28 U.S.C. §1651, or the Mandamus Act, 28 U.S.C. §1361, to award mandamus relief against state officials. *See Edwards v. Prelesnik,* No. 10-2005, 2011 U.S. App. LEXIS 26437 at *4 (6th Cir. Aug. 9, 2011) ("[T]he district court cannot issue a writ of mandamus to these defendants because they are state officials."). And, even if the court could consider relief in mandamus in this case, it is well-established that a federal court's power to issue writs cannot be used to evade the restrictions of the Eleventh Amendment. *See In re Baldwin-United Corp.*, 770 F.2d 328, 340 (2d Cir. 1985) ("The All Writs Act, which is itself limited by the jurisdiction of the federal courts, cannot be used to circumvent or supersede the constitutional limits of the Eleventh Amendment.").

Because the Court lacks the power to award relief in mandamus against Secretary LaRose or Attorney General Yost, and because Petitioners have disavowed any request for injunctive

relief, prospective or otherwise, this Court must conclude that the Ohio Respondents are entitled to immunity under the Eleventh Amendment to the United States Constitution.

**III.     Petitioners do not state a valid claim for relief under the All Writs Act.**

As the Ohio Respondents pointed out in their motion to dismiss, Petitioners' claim under the All Writs Act does not satisfy a single element of that claim. The Act allows federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Here, Petitioners' requested writ is not (1) in aid of a federal court's jurisdiction, (2) is not necessary and appropriate, and (3) is not agreeable to the usages and principles of law.

First, a writ under the All Writs Act must issue "in aid of" a federal court's jurisdiction, which means that Petitioners must assert "an independent basis for subject matter jurisdiction for a writ . . . to be issued pursuant to" the All Writs Act. *Maczko v. Joyce*, 814 F.2d 308, 310 (6th Cir. 1987). They do not. Petitioners quote from the NVRA and HAVA liberally, but they chose *not* to attempt to invoke this Court's jurisdiction under either statute. *See, e.g.*, Am. Petition at ¶¶ 210-257, Doc. 12 at PageID 442-432 (bringing claims solely under the All Writs Act and the Federal Mandamus Act). Nor can Petitioners rely on their claim under the Federal Mandamus Act, 28 U.S.C. § 1361, as a source of jurisdiction. *See id*. at ¶¶ 244-250, Doc. 12 at PageID 439-441. That act confers jurisdiction to district courts in "any action in the nature of mandamus to compel *an officer or employee of the United States* . . . to perform a duty owed to the plaintiff." 28 U.S.C. § 1361 (emphasis added).

Second, a writ will not issue under the All Writs Act unless it is "necessary or appropriate in aid of" the federal court's resolution of a matter over which it has jurisdiction, which means that the writ must somehow aid the court in resolving that matter. *Shoop v. Twyford*, 596 U.S. 811, 814

(2022). Again, there is no independent matter over which this Court has jurisdiction, so the requested writ cannot be necessary or appropriate in resolving it.

Third and finally, a writ under the Act must be "agreeable to the usages and principles of law" governing that writ. 28 U.S.C. § 1651. Petitioners cannot show that any writ of mandamus issued here would track the common-law scope of that writ. Most importantly, "federal courts have no authority to issue writs of mandamus to direct state courts or their judicial officers in the performance of their duties." *Haggard v. Tennessee*, 421 F.2d 1384, 1386 (6th Cir. 1970). And even were this not the case, Petitioners have an adequate remedy at law in Ohio Rev. Code § 3503.24(A) ("Application for the correction of any precinct registration list or a challenge of the right to vote of any registered elector may be made by any qualified elector at the office of the board of elections not later than the thirtieth day before the day of the election."). In short, Petitioners' Amended Petition does not establish a single element of a claim under the Act.

In opposing the Ohio Respondents' motion to dismiss, Petitioners do not seriously contend with these points. Instead, they offer a series of non sequiturs. They cite to Congress's power to regulate elections under the Elections Clause. Opp., Doc. 14 at PageID 771. But they do not explain how Congress's power to issue election regulations relieves them of their burden to plead a cognizable claim under the All Writs Act. Next, Petitioners claim that they may use a writ of mandamus to force state officials to comply with federal elections laws. *Id.* at 775. But even if Petitioners *could* use the Act to obtain a writ of mandamus against state officials, they must first plead a cognizable claim under the Act. And they failed here to satisfy any of the Act's elements.

Finally, Petitioners take issue with the Ohio Respondents' argument that mandamus cannot lie because they are not federal officers. But that is simply a correct statement of binding Sixth Circuit precedent and no reason to deny the Ohio Respondents' motion dismiss. *See Haggard*, 421

8

F.2d at 1386 (noting that "federal courts have no authority to issue writs of mandamus to direct state courts or their judicial officers in the performance of their duties"); *In re Schied*, 2008 U.S. App. LEXIS 18548 (6th Cir. Aug. 5, 2008).

**IV.    Conclusion**

For the reasons set forth above and in their motion to dismiss, the Ohio Respondents request that the amended petition be dismissed.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ Ann Yackshaw*
ANN YACKSHAW (0090623)
   *\*Counsel of Record*
HEATHER L. BUCANAN (0083032)
STEPHEN P. TABATOWSKI (0099175)
MARK D. TUCKER (0036855)
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, OH 43215-3428
Tel: (614) 466-2872 | Fax: (614) 728-7592
Ann.Yackshaw@OhioAGO.gov
Heather.Buchana@OhioAGO.gov
Stephen.Tabatowski@OhioAGO.gov
Mark.Tucker@OhioAGO.gov

*Counsel for Respondents Ohio Secretary of State Frank LaRose and Ohio Attorney General Dave Yost*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties have access to this filing through the Court's system.

/s/ Ann Yackshaw
ANN YACKSHAW (0090623)
Assistant Attorney General

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Northern District of Ohio Local Civil Rule 7.1(f), I hereby certify that this case has not been assigned to a track. This memorandum complies with the page limitations for unassigned cases.

/s/ Ann Yackshaw
ANN YACKSHAW (0090623)
Assistant Attorney General