**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO – EASTERN DIVISION**

| | |
|---|---|
| UNITED SOVEREIGN AMERICANS, INC., *et al.*, | CIVIL ACTION |
| *Petitioners,* | Case No.: 5:24-cv-01359 |
| v. | Judge John R. Adams |
| | Magistrate Judge Amanda M. Knapp |
| STATE OF OHIO, *et al.*, | |
| *Respondents.* | **PETITIONERS' RESPONSE IN OPPOSITION TO RESPONDENT UNITED STATES OF AMERICA'S MOTION TO DISMISS AMENDED PETITION** |

Petitioners, United Sovereign Americans, Inc, Coalition of Concerned Voters of Ohio, James Rigano, Carrie Perkins, Jacqueline Loughman, Joseph Healy, and Mary Ann Brej, hereby request that this Court deny Respondent United States of America's Motion to Dismiss Amended Petition in the above-captioned matter, as substantiated in the attached Memorandum.

Respectfully submitted,

By: _____
Bruce L. Castor, III
NDOH I.D. No.: 0103252
Thomas A. Will & Associates
6000 Town Center Boulevard, Suite 106
Canonsburg, Pennsylvania 15317
Telephone: (412) 281-5110
Facsimile: (412) 315-7708
Email: bcastor@thomasawill.com
*Counsel for Petitioners*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

MEMORANDUM IN SUPPORT ..................................................................................... 1

I.      INTRODUCTION ........................................................................................... 1

II.     FACTUAL AND PROCEDURAL HISTORY .............................................. 2

III.    LEGAL STANDARD ..................................................................................... 2

IV.    ARGUMENT .................................................................................................. 4

       A. The Amended Petition contains allegations sufficient to invoke federal jurisdiction. ................................................................................................. 4

       B. Petitioners have stated a valid claim under the Mandamus Act, as state election officials become quasi-federal officers subject to congressional oversight when regulating and administering federal elections, and therefore mandamus relief under the All Writs Act is the only remedy available to adjudicate Petitioners' claims. ............................................. 10

V.      CONCLUSION ............................................................................................. 16

CERTIFICATE OF SERVICE ...................................................................................... 17

CERTIFICATE OF COMPLIANCE .............................................................................. 17

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                    **Page(s)**

*Anderson v. United States,*
    417 U.S. 211 (1974) ........................................................................................ 11

*Baker v. Carr,*
    369 U.S. 186 (1962) ........................................................................................ 5, 6

*Bell Atlantic Corp. v. Twombley,*
    550 U.S. 544 (2007) ........................................................................................ 3

*Cartwright v. Garner,*
    751 F.3d 752 (6th Cir. 2014) .......................................................................... 2, 3

*Cheney v. United States Dist. Ct.,*
    542 U.S. 367 (2004) ........................................................................................ 13, 14

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ........................................................................................ 4, 5

*Directv, Inc. v. Treesh,*
    487 F.3d 471 (6th Cir. 2007) .......................................................................... 3

*Federal Election Comm'n v. Akins,*
    524 U.S. 11 (1998) .......................................................................................... 5, 6

*Food & Drug Admin. v. All. For Hippocratic Med.,*
    602 U.S. 367 (2024) ........................................................................................ 4

*Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
    528 U.S. 167 (2000) ........................................................................................ 6

*Gill v. Whitford,*
    585 U.S. 48 (2018) .......................................................................................... 5

*Gillis v. U.S. Dept. of Health and Human Servs.,*
    759 F.2d 565 (6th Cir. 1985) .......................................................................... 6

*Gomillion v. Lightfoot,*
    364 U.S. 339 (1960) ........................................................................................ 11

*Gray v. Sanders,*
    372 U.S. 368 (1963) ........................................................................................ 5, 11

*Guzman v. United States Dep't of Homeland Sec.*,
   679 F.3d 425 (6th Cir. 2012) ....................................................................................3

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982) ...............................................................................................6

*Hollingsworth v. Perry*,
   558 U.S. 183 (2010) .............................................................................................13

*In re: Coy*,
   127 U.S. 731 (1888) .............................................................................................11

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ..........................................................................................4, 5

*Massachusetts v. Envtl. Prot. Agency*,
   549 U.S. 497 (2007) ...............................................................................................6

*Memphis A. Philip Randolph Inst. v. Hargett*,
   2 F.4th 548 (6th Cir. 2021) ....................................................................................5

*Ohio Nat'l Life Ins. Co. v. United States*,
   922 F.2d 320 (6th Cir. 1990) .................................................................................3

*Oregon v. Mitchell*,
   400 U.S. 112 (1970) .............................................................................................11

*Reynolds v. Sims*,
   377 U.S. 533 (1964) .............................................................................................11

*Savel v. MetroHealth Sys.*,
   96 F.4th 932 (6th Cir. 2024) ..................................................................................2

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ...............................................................................................5

*Sistrunk v. City of Strongsville*,
   99 F.3d 194 (6th Cir. 1996) ...................................................................................3

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ...............................................................................................7

*Tenn. Republican Party v. Sec. and Exch. Comm'n*,
   863 F.3d 507 (6th Cir. 2017) .................................................................................7

*United States v. Slone*,
411 F.3d 643 (6th Cir. 2005) ..................................................................11

*Wilbur v. United States*,
281 U.S. 206 (1930).................................................................................14

**Statutes**                                                                 **Page(s)**

28 U.S.C. § 1331 ....................................................................................14

28 U.S.C. § 1361 ......................................................................................2

28 U.S.C. § 1367(a) ...............................................................................14

28 U.S.C. § 1651(a) ...........................................................................2, 13

52 U.S.C. §§ 20501 *et seq.* .....................................................................2

52 U.S.C. §§ 20501(b)(3)-(4).................................................................13

52 U.S.C. § 20507(a)(4).........................................................................13

52 U.S.C. § 20510(a) .............................................................................13

52 U.S.C. §§ 20901 *et seq.* ....................................................................2

52 U.S.C. § 21081(a)(1)(A)(ii)..............................................................12

52 U.S.C. § 21081(a)(5).........................................................................12

52 U.S.C. § 21083(a)(1)(A)....................................................................13

52 U.S.C. § 21111 ..................................................................................12


**Other Authorities**                                                        **Page(s)**

U.S. Const. art. I, § 4...................................................................10, 11, 14

U.S. Const. art. I, § 8, cl. 18 ..................................................................11

U.S. Const. art. III, § 2 .............................................................................4

Fed. R. Civ. P. 8(e) ..................................................................................3

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO – EASTERN DIVISION**

| | |
|---|---|
| UNITED SOVEREIGN AMERICANS, INC., *et al.*, | CIVIL ACTION |
| *Petitioners,* | Case No.: 5:24-cv-01359 |
| | Judge John R. Adams |
| v. | |
| | Magistrate Judge Amanda M. Knapp |
| STATE OF OHIO, *et al.*, | |
| *Respondents.* | **MEMORANDUM IN SUPPORT OF PETITIONERS' OPPOSITION TO RESPONDENT UNITED STATES OF AMERICA'S MOTION TO DISMISS AMENDED PETITION** |

## I.     INTRODUCTION

Petitioners, United Sovereign Americans, Inc. (*hereinafter* "USA"), Coalition of Concerned Voters of Ohio (*hereinafter* "CCVO"), James Rigano, Carrie Perkins, Jacqueline Loughman, Joseph Healy, and Mary Ann Brej (*collectively* "Petitioners"), are concerned Ohio citizens, voters, and organizations who seek to hold their elected and appointed officials accountable for wanton disregard of their responsibilities under federal laws designed to ensure that election results are held to a certain degree of accuracy. Petitioners have brought before this Court in their Amended Petition for Relief in the Form of a Writ of Mandamus (*hereinafter* "the Amended Petition") numerous documented deficiencies and errors within the Ohio active voter registration rolls which should have been identified and rectified by the responsible officials. Petitioners do not seek monetary relief, or any relief regarding past conduct, but rather request that

this Court intervene and require the named state and federal officials to comply with their statutorily mandated obligations under federal law.

## II.     FACTUAL AND PROCEDURAL HISTORY

Petitioners filed for a Writ of Mandamus in the above-captioned matter on August 8, 2024. In their filing, Petitioners raised significant concerns regarding the integrity of the election process in Ohio, along with many election integrity issues on the national level. Specifically, Petitioners point to violations of the National Voter Registration Act (*hereinafter* "NVRA"), 52 U.S.C. §§ 20501 *et seq.*, and the Help America Vote Act (*hereinafter* "HAVA"), 52 U.S.C. §§ 20901 *et seq.*, and request relief pursuant to the All Writs Act, 28 U.S.C. § 1651(a), and the Mandamus Act, 28 U.S.C. § 1361. Petitioners then filed the Amended Petition on September 5, 2024, narrowing the scope of their arguments to the important issues relevant to their claims. On November 14, 2024, Respondent, Merrick Garland, in his official capacity as Attorney General of the United States (*hereinafter* "Respondent Garland"), filed a Motion to Dismiss the Amended Petition asserting that this Court lacks jurisdiction over Petitioners' claims because they have failed to establish Article III standing. Respondent Garland further argues that the Amended Petition must be dismissed because Petitioners are not entitled to relief under the All Writs Act or the Mandamus Act.

## III.    LEGAL STANDARD

Rule 12(b)(1) permits dismissal of a complaint for lack of subject-matter jurisdiction. As such, a motion to dismiss under this subsection challenges the power of a federal court to adjudicate the claims set forth. *Savel v. MetroHealth Sys.*, 96 F.4th 932, 939 (6th Cir. 2024). When assessing the sufficiency of a complaint, the court must "evaluate whether the plaintiff has standing to bring the case." *Id.* A motion to dismiss for lack of subject-matter jurisdiction presents either a facial or factual attack. *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). A facial attack

concerns whether the plaintiff has sufficiently alleged a basis for jurisdiction in the pleadings. *Id.* "In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). By contrast, factual attacks challenge the veracity of the averments contained within the pleadings, and in such an instance the facts set forth are not entitled to any presumption of truthfulness. *Id.*

Under the Rule 12(b)(6) analysis, "[p]leadings must be construed as to do justice." Fed. R. Civ. P. 8(e). Absent certain limited circumstances, a complaint need only adhere to Rule 8(a)(2), which merely requires a "short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). When considering the sufficiency of the pleadings under Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). At the pleadings stage, dismissal of a complaint pursuant to Rule 12(b)(6) is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996) (internal citation and quotation marks omitted). Stated differently, federal courts will not grant a motion to dismiss unless it appears ***beyond doubt*** that the plaintiff ***cannot plausibly*** support his claim with facts which would entitle him to relief. *Guzman v. United States Dep't of Homeland Sec.*, 679 F.3d 425, 429 (6th Cir. 2012).

IV.  **ARGUMENT**

A.  The Amended Petition contains allegations sufficient to invoke federal jurisdiction.

Respondent Garland first asserts that Petitioners lack standing because they merely demand that the government act in accordance with the law. First and foremost, the manner in which Respondent Garland sets for this proposition is misleading. A more accurate summation of this argument would be that "[f]ederal courts do not operate as an open forum for citizens to press general complaints about the way in which government goes about its business." *Food & Drug Admin. v. All. For Hippocratic Med.*, 602 U.S. 367, 368 (2024) (internal quotation marks omitted). To obtain a judicial determination, a plaintiff must establish a personal stake in the outcome of a dispute. *Id.* Here, Petitioners do not merely claim standing due to their status as concerned citizens, as discussed further below, rendering this argument moot.

Respondent Garland further asserts that Petitioners do not meet the standing requirements as they have not suffered an injury-in-fact that is fairly traceable to Respondent Garland. As a preliminary matter, a complaint must simply *allege* standing; standing need not be *proven* at the pleading stage. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Article III limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. "One element of the case-or-controversy requirement [of Article III] is that plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (internal citations and quotation marks omitted). To invoke federal jurisdiction, a plaintiff must satisfy the "irreducible" minimum requirements of Article III standing: (1) injury-in-fact; (2) causation; and (3) redressability. *Lujan*, 504 U.S. at 560-561.

To satisfy the injury-in-fact prong of the *Lujan* requirements, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized'

4

and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). In other words, the injury must affect the plaintiff in a "personal and individual way." *Lujan*, 504 U.S. at 560. *See Gill v. Whitford*, 585 U.S. 48, 65 (2018) ("a person's right to vote is individual and personal in nature") (internal citation and quotation marks omitted). The injury must also be actual or imminent, not speculative, meaning the injury must have already occurred or be likely to occur in the near future. *Clapper*, 568 U.S. at 409. Importantly, "if one party has standing, then identical claims brought by other parties to the same lawsuit are also justiciable." *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 555 (6th Cir. 2021).

It is a well-recognized principle that any person whose right to vote has been impaired has standing to sue. *Gray v. Sanders*, 372 U.S. 368, 375 (1963). Qualified voters have a constitutionally protected right to cast their ballots and have their votes counted and reported correctly, undiluted by illegal ballots. *Id.* at 380. As stated by the Supreme Court regarding voting rights, "the most basic of political rights, [are] sufficiently concrete and specific" to establish standing. *Federal Election Comm'n v. Akins*, 524 U.S. 11, 24 (1998). Impairment may result from, *inter alia*, dilution from false tally, refusal to count votes from arbitrarily selected precincts, or stuffing of the ballot box. *Baker v. Carr*, 369 U.S. 186, 208 (1962). Respondent Garland argues that Petitioners' claims amount to mere generalized grievances concerning improper government conduct and therefore have failed to establish Article III standing. Generalized grievances in the context of standing refer to instances where a plaintiff's harm concerns "his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large." *Lujan*, 504 U.S. at 573. However, the Supreme Court has

5

previously held that a group of qualified voters alleging that a state's action diminished the effectiveness of their vote *did not* amount to a generalized grievance. *Carr*, 369 U.S. at 208.

While persons do not have standing to sue when they claim an injury that is suffered by all members of the public, "where the harm is concrete, though widely shared, the Court has found 'injury in fact.'" *Akins*, 524 U.S. at 24. The Supreme Court has been clear that "where large numbers of voters suffer interference with voting rights..." the interests related to that are sufficiently concrete to obtain the standing necessary to seek redress under Article III. *Id*. In *Massachusetts v. Envtl. Prot. Agency*, the "...EPA maintain[ed] that because greenhouse gas emissions inflict widespread harm, the doctrine of standing presents an insuperable jurisdictional obstacle." 549 U.S. 497, 517 (2007). The Court found that the "EPA's steadfast refusal to regulate greenhouse gas emissions presents a risk of harm to Massachusetts that is both 'actual' and 'imminent.'" *Id*. at 498-499. Here, harms implicating voting rights are generally widespread and affect many people. However, these injuries are of a type still reviewable by federal courts under Article III, as demonstrated by the cases cited above.

When a plaintiff is a group or organization representing several persons with similar injuries, "representational standing" exists when an organization's "members would otherwise have standing to sue in their own right, the interests at stake are germane to that organization's purpose, and neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000); *Gillis v. U.S. Dept. of Health and Human Servs.*, 759 F.2d 565, 579 (6th Cir. 1985). Additionally, an organization can assert an injury in its own right when a defendant's actions impede efforts to promulgate its organizational mission. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). To establish such organizational standing, the organization must

6

advance allegations identifying at least one (1) member who has suffered or will suffer injury. *Tenn. Republican Party v. Sec. and Exch. Comm'n*, 863 F.3d 507, 520 (6th Cir. 2017). However, the specificity requirements do not mandate identification of all individuals who were harmed if "*all* the members of the organization are affected by the challenged activity." *Id.* (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 498-99 (2009)).

The Amended Petition plainly alleges standing sufficient to establish subject-matter jurisdiction under Article III. Respondent Garland argues that Petitioners lack Article III standing for failure to allege an injury-in-fact with requisite specificity as to the deprivation of a legally protected interest and the imminent risk of future harm. Consider that James Rigano, a qualified voter in Ohio, along with USA and CCVO, sent multiple written inquiries to state election officials requesting information relative to Ohio's election law compliance. Ohio officials rebuffed these efforts. Consider further, Carrie Perkins, a candidate for the Triway School Board in 2023, lost her election by four (4) votes, a margin of defeat significantly lower than Ohio's 2022 voter system error rate of fourteen percent (14%) as alleged in the Amended Petition. So too Jacqueline Loughman, a qualified voter and poll worker in Ohio, who raised issues with the local board of elections regarding her inability to reconcile the machine vote. Ohio election officials told her to submit the voting materials for tabulation as part of the official count *without completing the audit*, thereby preventing her from performing her duties, a portion of which was to make sure the voting machine totals "squared" with other available data relative to that machine. Joseph Healy and Mary Ann Brej, both qualified voters in Ohio, cast their ballots in counties with the highest registration and voting violations as alleged in the Amended Petition, thus diluting their own votes, accepting the allegations contained within the Amended Petition as true.

Respondent Garland's assertion that Petitioners failed to establish a legally cognizable injury and likelihood of *future* harm in *subsequent* federal elections ignores the factual allegations Petitioners have plainly stated in the Amended Petition. Am. Petition at ¶¶ 170-209, Doc. 12 at PageID 424-432. Further, Respondent Garland's argument that Petitioners' injury constitutes a mere generalized grievance shared by the whole community is similarly unpersuasive. It was not the whole community that sent written inquiries to state election officials requesting transparency as to compliance with federal election laws and explanations regarding documented voter and registration irregularities. The whole community did not comb through innumerable pages of hard voter data to ascertain the accuracy of voter registration rolls. The whole community did not create a comprehensive report on apparent registration and voting violations. It was Petitioners who took these actions and Petitioners, *not* Respondent Garland, who informed the whole community of these issues, which the whole community could not have realized on its own. These actions distinguish Petitioners from the community at large -- actions which are not in the abstract. Rather, Petitioners have advanced multiple, specific allegations concerning, *inter alia*, discrepancies in voting records, which suggest this is not merely a speculative issue, but a very real problem raising legitimate concerns over whether Ohio is counting and considering their votes without dilution.

The Amended Petition states a sufficiently plausible cause of action, at the early stages of litigation, to confer presumptive standing upon Petitioners. Petitioners have set forth a series of factual allegations establishing that named Petitioners are individuals qualified to vote in Ohio whose votes were diluted in 2022 through Respondent Garland's failure to ensure that Ohio's voting systems and voter registration records meet certain federal standards prior to certification. Ohio election officials received notice of these apparent errors and did not take sufficient (or any) action to investigate the cause, reasonably leading Petitioners to believe that the same (or similar)

apparent errors will recur in every subsequent federal election if Respondent Garland fails to investigate and, where warranted, correct these anomalies going forward. Petitioners have identified said anomalies and brought them to the attention of Ohio election officials who bear the responsibility delegated by the General Assembly to regulate federal elections. Respondent Garland and his agents have failed to investigate and address these anomalies, despite that being Respondent Garland's job to do. In sum, no other means exist to require a government official to perform his duties apart from a writ of mandamus.

Petitioners have brought this action in an effort to mandate, through court order, that Respondent Garland compel Ohio election officials to investigate and take appropriate action concerning the apparent errors Petitioners have brought to their attention. Petitioners do not ask this Court to instruct Respondent Garland on *how* to perform his job. Rather, Petitioners seek court intervention to require Respondent Garland to simply *do* his job and take whatever action Respondent Garland considers appropriate to ensure compliance with congressional mandates. Petitioners will then ask this Court to order Respondent Garland to report to this Court the reasons for such significant discrepancies, including how it is possible that in 2022, various Ohio county boards of elections could possibly have certified more votes than there are qualified voters. Am. Petition at ¶¶ 193-199, Doc. 12 at PageID 429-430. Petitioners have attempted to gain access to this information through other means, such as public information requests, which have been repeatedly denied as alleged in the Amended Petition. As outlined above, Petitioners have satisfied the injury-in-fact requirement under Article III and, as further adduced below, the causation and redressability requirements, thereby conferring subject-matter jurisdiction upon this Court.[1]

---

[1] While Petitioners maintain that USA and CCVO have organizational standing, as both exist for the sole purpose of preserving the integrity of federal elections and therefore the claims set forth in the Amended Petition are directly tied to their respective organizational missions, neither organization is seeking a distinctive form of relief from the other named Petitioners, and as such each has standing in this action.

B. Petitioners have stated a valid claim under the Mandamus Act, as state election officials become quasi-federal officers subject to congressional oversight when regulating and administering federal elections, and therefore mandamus relief under the All Writs Act is the only remedy available to adjudicate Petitioners' claims.

Despite Respondent Garland's assertions to the contrary, Petitioners have clearly established federal jurisdiction over their mandamus claim, and for Respondent Garland to object to the relief sought is to discount Petitioners' right to vote. Under the Elections Clause, Congress conferred to individual state legislatures the authority to conduct statewide federal elections. U.S. Const. art. I, § 4, and the Framers' intent is clear upon a plain reading of the Constitution. The various states have *presumptive* authority to regulate and administer the election of all federal officers. However, by including the language "…but the Congress may at any time by Law make or alter such Regulations," the Framers clearly and unambiguously intended that Congress retain the ultimate authority under the Constitution to regulate federal elections. U.S. Const. art. I, § 4. Thus, the Constitution spells out that the *default* authority to regulate federal elections lies with the several states, subject to congressional mandates to the contrary, rendering the states subordinate to Congress.

The Framers *intentionally* intertwined the powers of the various states with those of Congress in the conducting of federal elections by making certain Congress maintained the ultimate power over the selection of its own members, thereby carving out a narrow exception to the principles of dual sovereignty and federalism. Accordingly, the Constitution reserves to Congress the *ultimate* power to regulate federal elections, while simultaneously delegating the *presumptive* power to individual state legislatures. The Ohio General Assembly has further delegated the state's power to regulate federal elections to the Office of the Secretary of State. These state officials, therefore, thus act as quasi-federal officers when carrying out congressional directives and, when such officials acting as quasi-federal officers fail or refuse to do so, it is

10

Respondent Garland's responsibility, as the chief law enforcement official of the United States, to ensure strict adherence to federal law. Only Respondent Garland is empowered to enforce and execute the will of Congress in this regard.

While a state official is generally insulated from federal judicial review when exercising power within the exclusive domain of a state interest, "such insulation is not carried over when state power is used as an instrument for circumventing a federally protected right." *Gray*, 372 U.S. at 372 (citing *Gomillion v. Lightfoot*, 364 U.S. 339, 347 (1960)). Federal courts regard the right to vote in a fairly conducted election as federally protected, *Reynolds v. Sims*, 377 U.S. 533, 554-55 (1964), and the Supreme Court decreed that Congress has authority under the Constitution's Necessary and Proper Clause to regulate any activity during a mixed federal/state election that exposes the federal election process to potential misuse, whether that harm materializes or not. *In re: Coy*, 127 U.S. 731, 752 (1888); *United States v. Slone*, 411 F.3d 643, 647 (6th Cir. 2005). "Every voter in a federal...election...whether he votes for a candidate with little chance of winning or for one with little chance of losing, has a right under the Constitution to have his vote fairly counted, without its being distorted by fraudulently cast votes. *Anderson v. United States*, 417 U.S. 211, 227 (1974). The Court further endorsed "the right to vote freely for a candidate of one's choice is of the essence of a democratic society[.]" *Oregan v. Mitchell*, 400 U.S. 112, 138-39 (1970).

Congress chose to exercise its powers under the Elections Clause and the Necessary and Proper Clause to intervene in Ohio's presumptive constitutional authority to regulate federal elections by enacting federal election laws such as HAVA and NVRA. U.S. Const. art. I, § 4; U.S. Const. art. I, § 8, cl. 18. In doing so, Congress effectively deputized the Ohio General Assembly to carry out its will. The Ohio General Assembly then delegated that responsibility from the Constitution and Congress to the Ohio Secretary of State, thus blurring the lines of dual

sovereignty such that the Ohio Secretary of State must directly answer to Congress. The will of Congress is executed by the Executive Branch, as outlined generally under Article II, and the Department of Justice is tasked with administering federal law enforcement. Respondent Garland, as Attorney General of the United States, is the federal official responsible for overseeing and managing the Department of Justice. Respondent Garland, therefore, is the only enforcement authority empowered to hold state and county officials accountable for their failure to comply with federal election legislation. As such, absent this Court's intervention, states will remain free to ignore congressional mandates in future federal elections.

Under HAVA, the two (2) provisions at issue impose mandatory language on election officials. For example, 52 U.S.C. § 21081(a)(5) states that the "error rate of [a] voting system in counting ballots...shall comply with the error rate standards established under section 3.2.1. of the voting systems standards issued by the Federal Election Commission[.]" Use of the word "shall" constitutes mandatory language. Furthermore, 52 U.S.C. § 21081(a)(1)(A)(ii) states voting systems "shall...provide the voter with the opportunity (in a private and independent manner) to change the ballot or correct any error before the ballot is cast and counted (including the opportunity to correct the error through the issuance of a replacement ballot if the voter was otherwise unable to change the ballot or correct any error.)" The use of "shall," again, constitutes mandatory language. HAVA states "[t]he Attorney General may bring a civil action against any State or jurisdiction in an appropriate United States District Court for such declaratory and injunctive relief...as may be necessary to carry out the uniform and nondiscriminatory election technology and administration requirements under sections 21081, 21082, and 21083 of this title." 52 U.S.C. § 21111. While this requirement pertains to voting systems, election officials subject to judicial authority are responsible for configuring and managing voting machines.

NVRA likewise contains mandatory language. For example, "each State shall…conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of death of the registrant; or a change in the residence of the registrant." 52 U.S.C. § 20507(a)(4). NVRA exists in part "to protect the integrity of the electoral process" and "to ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. §§ 20501(b)(3)-(4). Similarly, HAVA mandates that voter roll databases contain only registrations of qualified citizen voters residing in that state. 52 U.S.C. § 21083(a)(1)(A). Maintaining the accuracy of voter rolls and voting systems, provisions which are mirrored in the Ohio Revised Code, is therefore required under the Constitution to uphold the right of the people to choose their representatives. Like HAVA, NVRA states "[t]he Attorney General may bring a civil action in an appropriate district court for such declaratory or injunctive relief as is necessary to carry out this chapter." 52 U.S.C. § 20510(a). A writ of mandamus is the remedial mechanism through which the Respondent Garland can be held accountable to Congress for refusing to enforce congressional legislation consistent with the foregoing.

The All Writs Act grants this Court the power to "issue all writs necessary or appropriate in the aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). A writ of mandamus is warranted where the moving party establishes that "(1) no other adequate means [exist] to attain the relief he desires, (2) the party's right to issuance of the writ is clear and indisputable, and (3) the writ is appropriate under the circumstances." *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (quoting *Cheney v. United States Dist. Ct.*, 542 U.S. 367, 380-381 (2004)) (internal quotation marks omitted). Writs of mandamus apply to ministerial actions. A "ministerial action" is a duty in a particular situation so plainly prescribed, as is the case with respect to the mandatory HAVA and NVRA language cited above, as to be free

from doubt and equivalent to a positive command. *Wilbur v. United States*, 281 U.S. 206, 218 (1930). Mandamus under the All Writs Act is a remedy reserved for extraordinary circumstances where no other form of relief can adequately provide redress. *Cheney*, 542 U.S. at 369. Refusing to comply with federal election laws, in defiance of Congress, constitutes an extraordinary circumstance.

Here, Respondent Garland argues that mandamus is not "necessary or appropriate" to the resolution of Petitioners' claims and is not agreeable to the usages and principles of law because the requested relief exceeds the permissible scope of a writ of mandamus.[2] Respondent Garland cannot dispute that Congress, by enacting HAVA and NVRA, delegated the power to enforce the administration of federal elections to the Attorney General of the United States. Respondent Garland cannot dispute Congress' ultimate authority to regulate federal elections under the Elections Clause. U.S. Const. art. I, § 4. Respondent Garland cannot dispute that congressional mandates under HAVA and NVRA are plainly within the scope of his duties as Attorney General of the United States. It follows, then, that Respondent Garland cannot dispute that he is required to enforce HAVA and NVRA in Ohio's federal elections by taking action through this Court to compel Ohio election officials to conduct such elections in accordance with federal law.

The very purpose of the All Writs Act is to provide a remedy by which federal courts may rectify extraordinary circumstances such as those at issue here, where the Attorney General of the United States has refused to enforce federal election law. But Respondent Garland argues, despite Congress' undisputed and superseding power to regulate federal elections, he is *not* required to comply with congressional election legislation, and therefore Petitioners cannot be afforded mandamus relief under the All Writs Act because Ohio election officials are not *federal* officers.

---

[2] Petitioners have established standing in this matter, as outlined above and under 28 U.S.C. §§ 1331 and 1367(a), and therefore the requested writ of mandamus is "in aid of" a matter over which this Court has jurisdiction.

In other words, according to Respondent Garland, no constitutional mechanism exists by which the Attorney General of the United States may hold *state* election officials accountable for violating *federal* law. Accepting Respondent Garland's contention as true would lead to an absurd result, as Respondent Garland advances the ridiculous notion that state officials are effectively empowered to regulate and administer federal elections *without any congressional oversight or enforcement whatsoever*. The language of the Elections Clause clearly precludes this outcome, as Congress retains the *ultimate* authority to regulate federal elections. The All Writs Act exists as an enforcement mechanism through which the will of Congress, imposed through Respondent Garland, may enjoin state election officials from violating federal election legislation, including HAVA and NVRA.

Here, mandamus relief is not merely "necessary or appropriate" to this Court's resolution of Petitioners' claims, it is the *only* remedy available to compel Respondent state officials' subservience to Congress' ultimate authority to regulate federal election processes. Petitioners are asking this Court to aid in addressing systemic issues raised in the Amended Petition by requiring Respondent Garland to demand that state officials adhere to federal election legislation. Only federal courts are empowered to resolve the whole of Petitioners' claims, and the only available remedy for purposes of adjudicating Petitioners' claims is the requested writ of mandamus.

## V.      CONCLUSION

Based on the foregoing, Petitioners respectfully request that this Court deny Respondent Garland's Motion to Dismiss in the above-captioned matter.


Respectfully submitted,


Date: <u>December 11, 2024</u>        By:       _____

                                           Bruce L. Castor, III
                                           NDOH I.D. No.: 0103252
                                           Thomas A. Will & Associates
                                           6000 Town Center Boulevard, Suite 106
                                           Canonsburg, Pennsylvania 15317
                                           Telephone: (412) 281-5110
                                           Facsimile: (412) 315-7708
                                           Email: bcastor@thomasawill.com
                                           *Counsel for Petitioners*

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2024, a copy of the foregoing Petitioners' Response in Opposition to Respondent United States of America's Motion to Dismiss Amended Petition was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties have access to this filing through the Court's system.

_____
Bruce L. Castor, III
NDOH I.D. No.: 0103252
*Counsel for Petitioners*

## CERTIFICATE OF COMPLIANCE

Pursuant to Northern District of Ohio Local Civil Rule 7.1(f), I hereby certify that the foregoing Memorandum in Support of Petitioners' Opposition to Respondent United States of America's Motion to Dismiss Amended Petition is sixteen (16) pages in length, which is within the limits set forth for unassigned matters or matters assigned to the standard track.

_____
Bruce L. Castor, III
NDOH I.D. No.: 0103252
*Counsel for Petitioners*